## FOURTH DISTRICT, 1896.

### City of San Antonio v. San Antonio Street Railway Co.

Delivered November 11, 1896.

**1. Municipal Corporation—Street Railways—Sewers—Injunction.**

The franchise of a street railway corporation is subordinate to the charter right of the city to control its streets and construct sewers therein, and an injunction will not be granted in behalf of such corporation to restrain the city from laying sewer pipes along the center of its streets where they will interfere with street railway tracks already there.

**2. Same—Constitutional Guaranty Against Taking Property for Public Use not Applicable.**

The constitutional guaranty against taking property for public use is not applicable in such case, and the city can not be held liable for the damages necessarily occasioned to the street railway company by the laying of sewer pipes.

**3. Same—Action of City Council Conclusive.**

Where it is not alleged or shown that the city council acted arbitrarily or capriciously in directing the sewer pipes to be laid in the centres of the streets (where they would interfere most with the street car tracks) the courts will not undertake to revise or control the honestly exercised discretion of the council, although the proof may tend strongly to show that there was no necessity for putting the sewer pipes in the center of the streets.

APPEAL from Bexar. Tried below before Hon. R. B. Green.

*R. B. Minor*, for appellants.—1. The city council of the defendant city has, by the provisions of its charter, full power to construct a system of sewers for said city, together with the power and discretion of selecting and determining upon the plan of such system, including the location or sewer mains in the street. Charter of City of San Antonio, secs. 60, 49, 57; 1 Dillon Munc. Corp. (4th Ed.), secs. 94-5; and see authorities under next proposition.

2. The discretion given the city council of the defendant city in the matter of selecting a plan for the sewer system of said city (incluing the location of the sewer mains in the streets) cannot be controlled or interferred with by the courts. 1 Dillon Mun. Corp. (4th Ed.), secs. 94-5; Elliott on Roads and Streets, p. 576, note 4 (criticising City of Burlington v. Burlington St. Ry. Co., 49 Iowa, 144); Johnston v. District of Columbia, 118 U. S., 19; Macy v. Indianapolis, 17 Ind., 267; Louisville City Ry. v. City of Louisville, 8 Bush. (Ky.), 415; Carr v.

Northern Liberties, 35 Penn. St. 324, 78 Am. Dec., 342; Teagarden v. Racine, 56 Wis., 545; Page v. St. Louis, 20 Mo., 136; and cases cited in Dillon, Mun. Corp., p. 151, note.

3.   In so far as the street railway company relies upon the constitutional guaranty against damage to property without compensation, it should be noticed that the constitutional provision referred to, while it may in a proper case, serve as a basis for the recovery of damages, can never warrant an injunction, the sole relief sought in the present case, because in the case of mere damage or destruction of property the Constitution does not require that the compensation be first made or secured by a deposit of money, as is required in case of a taking of property.   The language of the Constitution on this subject is as follows:

"Sec. 16. (Art. 1.)   No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless, by the consent of such person; and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money."

5.   It is utterly at variance with the character of the rights of the public in a street to contend that in the construction of a public work the public should be required to put up with anything but the best location in the street; and in a work such as a system of sewers, the efficient working of which is so vital to the health and even the preservation of the lives of the people, to say that anything short of the best attainable results and the utmost known facilities for attaining and insuring such results should be accepted by the city, out of solicitude for the interest of a street railway company, is to treat with contempt the sovereign rights of the public.

*Houston Bros.*, and *Upson, Bergstrom & Newton*, for appellee.—1. The grant of the charter by the Legislature of the State of Texas to the San Antonio Street Railway Company and the permit of the city council of the city of San Antonio to construct and operate a system of railways upon the streets of the city, and the acceptance of such permit and the expenditure of large sums of money thereunder, constitutes a contract between the city and the street railway company, a vested right which the city cannot impair, except by the exercise of its power of eminent domain, or police power.   Mayor v. Street Railway Co., 83 Texas, 548.

2.   A line of street railway constructed under and by virtue of the charter and grant as set out in the foregoing first counter-proposition, and the right to operate the same, is a contract and vested right, and such right and franchise, together with the rails and ties, are private property, and under the Constitution of Texas cannot be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, although there be no direct or physical invasion of the property.   Constitution, art. 1, sec. 17; Cooper v. City of Dallas, 83 Texas, 239; Kinsman

Street Railway Co. v. Broadway Street Railway Co., 5 Am. & Eng. Railroad Cases, 327.

3.  The city council of the defendant city has, by the provisions of its charter, full power to construct a system of sewers for said city, together with the power and discretion of selecting and determining upon the plan of such system, including the location of sewer mains in the streets; but to be valid, the exercise of such discretion must be reasonable, and it is for the courts to determine the reasonableness of all ordinances of the city council. Meyers v. Chicago, 7 Am. & Eng. Railroad Cases, 406; Center v. Barenstein, 11 Am. & Eng. Railroad Cases, 413; Street Railway Co. v. City of Des Moines, 1 Am. & Eng. Railroad Cases (N. S.), 218, note; Clapp v. Spokane, 53 Fed. Rep., 515.

NEILL, ASSOCIATE JUSTICE.—This is a suit for injunction, brought by the San Antonio Street Railway Company, appellee, against the City of San Antonio and its engineer, A. P. Pancoast, appellants, and Wilding, Marshall, Bacus, and Hines, sewer contractors, who have not appealed, to restrain all defendants from constructing sewers in and along the centres of portions of certain streets in said city, whereon plaintiff is alleged to have double tracks over which its lines of railway are constructed and operated.

Plaintiff alleged in its petition that it was incorporated by an act of the Legislature which empowered it to build, equip and operate street railways in the city of San Antonio, and to build such railroads on any street within its corporate limits as might thereafter be agreed upon by the mayor and aldermen of said city and itself; that the city council, by an ordinance passed on October 5, 1875, granted plaintiff the privilege of constructing a line of first class horse railroad, etc., upon certain streets, avenues, alleys and bridges of said city. That in exercise of the franchises conferred by its charter and said ordinance, it constructed a large system of street railway in the City of San Antonio, and by agreement with the council changed its motive power from animal to that of electricity; that among other streets it constructed its line upon Avenue C in said city, it being one of the principal streets; that its road on said street was a double track and is operated between the two principal railway depots in said city.

That after the complete construction of said line on Avenue C, to-wit, on January 14, 1895, the city of San Antonio entered into a contract with one Hendry to construct a complete system of sewers in said city, with sewers to be laid in its streets in accordance with certain plans and specifications prepared for the construction and completion of the system, which plans and specifications provide that all sewer pipes and conducts shall be laid in the centres of the streets, and constructed and completed under the direction and control of the city engineer; that among other things in said plans and specifications it was provided that a portion of said system should be constructed by laying an eight inch

pipe along the centre of Avenue C, and along said street from Ninth to Tenth street a twenty-four inch main; that said contract was thereafter, by agreement of both parties thereto, assigned by Hendry to defendants Wilding, Marshall, Bacus and Hines, who have agreed to construct the system as Hendry bound himself to do.

That said assignees of the contract are proceeding to and are constructing said system of sewers, and have notified the city engineer to immediately begin the construction and laying an eight-inch sewer pipe between the two parallel tracks of plaintiff's railway on Avenue C, from Ninth to Tenth streets thereon and that said contractors have served notice on plaintiff that they will proceed to work on November 5, 1895; that for the purpose of laying such pipe it will be necessary to make an excavation about two feet wide ranging from eight to fifteen feet deep; that such excavation will be made within a few inches of the rails of plaintiff's track on each side, and will necessarily destroy the lateral support of its tracks, cars, motors, etc., and render it dangerous in case of rains to operate its cars on said tracks, and necesssarily destroy its road-bed, and that therefore it will probably become necessary for plaintiff to remove its track until such sewer can be constructed, thereby interrupting travel and depriving plaintiff of its revenues, etc.

That there is no necessity for constructing the sewer in the centre of said street, because the distance between the track and curbstone on either side is about seventeen feet, where the sewer could be conveniently laid without injuring or damaging any property, and there will be no necessity to injure or damage any person's property in the cause of repairing said sewers thereafter; that said system of sewers will be as efficient and can be as efficiently operated when placed on the sides of the street as if laid in its centre.

That the said tracks and franchises are plaintiff's private property, and it is entitled to be protected by the Constitution and laws of this State against the taking and damage or injury to its said property by the city of San Antonio, without just compensation being first made therefor, and that defendant city is now attempting to destroy plaintiff's property without making any compensation therefor whatever.

By a supplemental petition like allegations are made in reference to plaintiff's railway on Austin street, between Duval and Crosby streets, and the injunction prayed for in the original petition is asked to be so enlarged as to include that part of Austin street.

The defendants excepted to the original and supplemental petitions on the following grounds:

(1) Because it appears therefrom that plaintiffs property rights in the streets mentioned are such as were acquired and held subject to the right of defendant city to do that which is complained of by plaintiff.

(2) Because the question of necessity, expediency and propriety of locating said sewers in the centre of said streets is one to be determined

exclusively by the city council, who, as it appears from said petitions, have determined upon the location of the same.

The defendants then answered, by pleading the city's charter powers giving it exclusive control of its public streets, to regulate the location and construction of street railways, water mains, electric wires, sewers, drains, etc., and that in exercise of such powers its council had determined upon and adopted a system of sewers in the centres of its streets, and that such determination as to the plan of the sewer system is conclusive. They also specially denied the allegations to the effect that there is no necessity for constructing the sewers on Avenue C and Austin street in the center of said streets, and at great length, plead facts showing it is necessary, etc.

The exceptions of defendants to plaintiff's petition were overruled, and the issue as to whether or not under the system of sewers adopted by the city, it was necessary for the sewers to be laid along the centers of Avenue C and Austin street was submitted to the jury—they being instructed to find for defendants if it was necessary, and for plaintiff if it was not. The verdict was for plaintiff, and judgment rendered on it perpetuating the injunction. This appeal is from such judgment.

The City of San Antonio is given by its charter the following powers:—

"Sec. 57. To have exclusive control and power over the streets * * * of the city * * * to put sewers and drains therein.

"Sec. 60. To establish, erect, construct, regulate and keep in repair * * * sewers * * * and to regulate the construction and use of same."

"Sec. 49. To make regulations to secure the general health of the city, etc."

These provisions date back to the original enactment of the present charter, August 13, 1870.

"Sec. 203b. (Amendment of 1895). Said city is hereby given the right to lay, construct and maintain its sewers in, under and across or along any public street, highway, or public grounds within or without the corporation limits of said city; provided that due regard shall be had for franchise rights and vested rights in, upon, and along said streets, highways and public grounds."

The grant by the city council conferring upon appellee the right to construct and operate its street railway along the streets of the city, the construction and operation of appellee's road upon and along Avenue C and Austin street, the adoption by the council of the sewer system requiring sewer pipes to be laid along the center of said street, that they were about to be so laid in said streets when this suit was filed, and that in laying such sewers a trench would be dug in the center of said streets that would impede the operation of said railway, if not temporarily suspend it, causing pecuniary loss to appellee,—are facts established as alleged by appellee.

If the fact as to whether it is necessary under the system of sewers adopted by the city for the sewers to be laid along the centers of Avenue

C and Austin streets, is subject to the determination of the courts, we shall find in accordance with the verdict that such necessity does not exist. The action of the city council in directing its sewers laid in the centers of the streets was neither arbitrary nor capricious, but was in the honest exercise of its sound discretion.

The assignments of error complain of the court's overruling appellants' exceptions and submitting an immaterial issue to the jury.

We believe all the assignments are well taken, and the following extracts from appellants' brief are expressive of our reasons for so holding:

"To properly measure the relative rights of the public on the one hand and of a street railway company or other licensees on the other hand, in a public street, it should be borne in mind that the fundamental idea of a street is that it is public. The public uses of a street, such as its use by the people at large for ordinary travel on foot and in ordinary vehicles together with its use by the public authorities for the construction and maintenance of public works, such as sewers, water works, etc., constitute the primary uses of the street; and though private persons and corporations are permitted to lay street railway tracks, water, gas and steam pipes, as well as electric wires, in the streets, because they so far contribute to the convenience and accommodation of the public as to acquire a quasi public character, yet these secondary, quasi public uses of the street are, and of necessity must be, subordinate to the other strictly public and primary uses of the street, and, with a view to maintaining that subordination, a license must be obtained from the municipal authorities (the custodians of the street) before any such special and quasi public use can be made of the street; and such licensees can acquire no rights which are inconsistent with this subordination." Elliott on Roads and Streets, pp. 367-8; 575-6 and, note 4 on page 576, 577, 489; Railway v. Louisville, 8 Bush (Ky.), 415; Kirby v. Railway, 48 Md., 168; 30 Am. Rep., 455; Booth's Street Railway Law, sec. 42; City of Detroit v. Railway, 51 N. W. Rep., 688.

"The duty of adopting a general plan of drainage, and determination when and where sewers shall be built, of what size and at what level, involving, as it does, the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory, can be effectively performed only by some person or tribunal vested with full authority and armed with the necessary means to accomplish that end, and devoting the necessary time to the matter and obtaining the requirements of the system of sewerage as an entirety. The Legislature, appreciating this fact, has imposed upon the city council this duty, with the discretionary powers necessary and proper to its performance. There is no rule of law better settled than that the courts will not undertake to control nor interfere with the discretion given a municipal council in the matter of determining upon a plan for such public work or the necessity of particular features of such plan. If a court

or jury were to pass upon the advisability or expediency of a particular feature of the system at a particular place in the city, not only would it be impossible upon the trial of the case to give the matter that thorough and comprehensive investigation which such a matter would demand, but another jury might be called upon to pass upon another feature of the system at another place, and so on indefinitely until numberless features of the system at numberless places throughout the city would have been modified by successive juries, no one jury having had any means of consulting with another or of hearing the evidence adduced on other trials; and the inevitable consequence would be a series of incongruous, incompatible results which no engineering skill could harmonize.  This reductio ad absurdum shows that the rule that courts will not undertake to control the discretion of the municipal council in these matters, is founded not only in reason but in imperative necessity."  1 Dillon on Mun. Corp., secs. 94, 95, 483; Hines v. City of Lockport, 50 N. Y., 233; Bell v. City of Rochester, 30 N. Y. Sup., 365; Elliott on Roads and Streets, p. 576; Johnson v. District of Columbia, 118 U. S., 19.

"The property rights of appellee in the streets of the city having been from their incipiency subject to the right of the public to locate sewers in said streets, no right of compensation can arise in favor of the street railway company as against the public, or its representative, the city, by reason of any loss or expense which the appellant may incur by rea son of the exercise of this right of the public.  Kirby v. Railway, 48 Md., 168, 30 Am. Rep., 455; Matter of Deering, 93 N. Y., 361.

"The right of the public to use the streets for public works, such as sewers, rests upon something more than the general reserved right (reserved in every grant by municipality), to the continued exercise of the police power.  That right may be exercised to the detriment of property to which the citizen has absolute title, it being the sovereign right to do whatever the public health, safety, peace, or welfare may necessitate. It presupposes an absolute title in the citizen to the property affected, or, in case of the interest of an abutting owner in a street, an absolute title to every right not embraced in the dedication.  Recognizing these original rights in the citizen, sovereignty nevertheless comes in and renders them subservient to the necessities of the public.  Where only consequential damage results, the power is termed the police power, no compensation being allowed, unless in some cases, it is required by the modern constitutional guaranties against 'damage without compensation,' as under our Constitution, art. 1, sec. 17.

"Where there is a taking, the right exercised is the right of eminent domain, and there compensation must always be made.  All persons who acquire title, even the highest degree of title attainable, to property, do so with the knowledge that it may be thus damaged or condemned for public purposes.  But these are not the only rights possessed by the public in this case, in the streets in question, as against the street railway company.  The public and the street railway company

derive their respective rights in the street from one and the same grant, namely, the original dedication of the land to the uses of a street; and in that grant the use for street railway and such other purposes was made secondary and subordinate to the uses for strictly public purposes such as sewers. To the uses of the public at large primarily was the street dedicated, and though, under special license from the municipality as the custodian of the street, street railways may be laid in the streets, by reason of the fact that they contribute to the general convenience and thus possess a quasi public character, the very reason or ground upon which these licenses are permitted carries with it the recognition of the dedication of the street primarily to strictly public use. In making use, therefore, of a public street to lay sewers therein, though loss ensue to the street railway company, the public through its representative, the municipality, is not invading or injuring private property, it is but appropriating that which is its own; the street railway company having only a right to use the street until needed by the public, has no more right to complain of the public's thus reclaiming its own than would the tenant of a particular estate, depending for its duration upon the happening of a certain event, be justified in complaining of the entry of the remainderman upon the happening of the event. Though the analogy is not complete, yet the subordination of right is as clear in the one case as in the other."

We have examined carefully the authorities cited by appellee, and find none of them, save Clapp v. Spokane, 53 Fed. Rep., 515, tends to support its position. In that case the opinion was delivered by a judge of an inferior Federal Court, is contrary to the views first expressed by the judge himself, is without citation of authority, and it can hardly be expected that this court should, against the overwhelming weight of authority, take it as authority.

As it was not alleged, and there is no evidence tending to show, that the city council, in the exercise of its general discretion and supervision, acted arbitrarily or capriciously in regard to the laying of its sewer pipes, but as it is shown it acted reasonably and honestly in the matter, the courts have no authority to revise or interfere with its discretion and action. And as under no theory presented by appellee's petition and the evidence adduced in this case would the appellee be entitled to the injunction, the judgment of the District Court is reversed and judgment here rendered in favor of appellants, dissolving said writ, and for all costs in this behalf expended.

*Reversed and rendered.*

Writ of error refused.