### HENRY S. EHRET

*v.*

### THE CAMDEN AND TRENTON RAILROAD COMPANY.

[Filed November 27th, 1900.]

A trolley railway, upon a country highway, is not an additional servitude upon the land of the abutting owner who owns to the middle of the road.

On demurrer.

*Mr. Charles K. Chambers* and *Mr. Mark R. Sooy,* for the complainant.

*Mr. Howard Flanders, Mr. Samuel Belden* and *Mr. David J. Pancoast,* for the defendant.

REED, V. C.

The question presented by these demurrers is whether a trolley railway upon a country highway is an additional servitude upon the land of the abutting owner, who owns to the middle of the road. The bill is filed to enjoin the construction of such a road in front of complainant's property. From the bill it appears that the complainant owns land in the township of Beverly, in Burlington county, fronting, as described in the deed set out in the bill, one hundred and seventy-nine feet on a public road, also called Warren street, leading from the city

of Beverly to the city of Burlington. The charge is that the defendant, under a certificate of incorporation under the act of 1893, for the formation of trolley companies, and under an ordinance of the township of Beverly, is about to construct a line of passenger railway, to be operated by electricity, over the said road and over the land of the complainant lying in said road, without making compensation to complainant.

The question, then, is whether a trolley road to be constructed under the act of 1893 imposes a burden upon the land of an abutting owner in excess of the public easement which arose by the creation of the highway. The law is settled that a trolley road in a city does not entitle to compensation. *Roebling* v. *Railway Co., 29 Vr. 666.* If it imposes an additional servitude upon land over which a country highway runs, it must be because the easement in the public, in the case of a highway in a township, differs from the easement of a street in a pure municipality; and the difference must be in respect to the propriety of the use in either highway or street for such a method of locomotion. Now, a street may be put to many uses which are disconnected from its primary purpose, of affording a passage for vehicles and pedestrians. These uses spring out of the necessities of a congested urban community. It may be admitted that some of these secondary uses may be imposed upon land of an abutter upon a street, without compensation, and may not be imposed upon an abutter along a highway. However that may be, I fail to perceive any difference in the easement which the public has in a country road, on the one hand, or a city street, on the other, which would make a trolley operated under the act of 1893 an additional servitude in the one instance and not in the other. I am not speaking of a road built and run in the manner pictured by the late chancellor in his opinion in the case of *West Jersey Railroad Co.* v. *Camden, Gloucester and Woodbury Railway, 7 Dick. Ch. Rep. 31, 35.* Nothing in the bill intimates that the cars or motive power, or speed or tracks are to be different from other roads known under the name of trolley railways. So it must be assumed that the road is to be used as an ordinary street railroad, the motive power of which is elec-

tricity. The features of such a road are that its tracks are laid so as not to interfere with the use of the surface of the road by other vehicles; that its cars are of such size and run at such a speed as not to interfere with other traffic; that such stops are made as will accommodate those living along the line of the road. So used, I do not perceive the least difference in the adaptability of such a road to the uses of a highway, whether it be a country road or a municipal street.

Its design is to serve the primary purposes of a highway, namely, to enable people to pass from one place to another.

If a distinction is to be drawn between highways and streets, upon what line shall they be distinguished? If density of population along the highway is to be the criterion, how closely must the houses stand—must they be within fifty feet, fifty yards, or five hundred yards, to destroy the right of an abutting owner to damages? If the test is to be a corporate test, and all roads lying within townships to be within one class, and all roads within other municipalities within the other class, what is the substantial basis of difference? I can perceive none.

Then again, as pointed out by Vice-Chancellor Grey, in his opinion, when this case was before him upon an order to show cause why an injunction should not issue, a rural community in a short time may become an urban community, and thus the abutter upon a highway, who now has a right to damages for the location in front of his premises of a street railway, the next year may be stripped of that right, by the fact that neighbors have built in his vicinage, or because the lines of a borough have been extended so as to include his property.

In the case of *Zehren v. Milwaukee Electric Railway and Light Co., 99 Wis. 83,* it was held that an electric road in a highway was different in its purpose and effect from an electric road in a street. The force of the opinion, however, was spent in considering the right to change the grade of the highway, for the sole purpose of the electric road, so as to seriously impair the right of access of abutting owners.

It was held that the power of a municipality to change road grades will be controlled by the courts where it appears that

the change is not for municipal purposes, but exclusively for the benefit of a private corporation.

It was also held that the electric road was an additional servitude, but the distinction between highways and streets was not elaborated.

The court was content to rely upon the case of *Pennsylvania Railroad Co.* v. *Montgomery County Passenger Railway, 167 Pa. St. 62.* It was held in that case that the construction of a street passenger railway upon the surface of a highway, within a township, imposed an additional servitude. In the opinion in that case the difference in the easement of the public in a city street and in a country highway was illustrated by Pennsylvania cases, in one of which it was held that a pipe line could not be laid in a highway, and in the other that it could be laid in a street, without imposing an additional servitude.

The illustrative use, it is perceived, belongs to the second class of servitudes already mentioned. The purpose of a street railroad, on the other hand, is to subserve the primary purposes of a highway. The case mainly deals with the inability of the township authorities, under their legal organization, to give consent to an electric railroad to carry passengers over a highway, through a township, on a journey from one city or borough to another, because it is in no sense a township purpose. But, as I must assume that the structure to be constructed on this highway is to serve the public within the township in exactly the same manner as within a municipal corporation, I cannot perceive why the road does not serve the people of a township in the same way as the people of a city.

I am of the opinion that the bill states no ground for relief.