[No. 7320.]

## MOFFAT ET AL. V. CITY AND COUNTY OF DENVER.

1. MUNICIPAL CORPORATIONS—*Streets— Franchises Granted Therein.*
The prime purpose of a street is to provide a way for public travel; an easement in the sub-surface, even for lawful purposes is not an absolute right, but subordinate to the rights of the public therein, and subject to the powers of the municipal authorities to make such reasonable improvement or changes therein as in their judgment the public interest demands.  (477, 478)

A water company had laid pipes for the conduct of water through the streets of a municipality whose inhabitants it served; this by authority of a franchise granted by the municipality, and without any provision that the pipes when laid should not be disturbed. Upon the excavation of the street by the City to form a subway, in order to avoid grade crossings of certain railroads, it became necessary to remove the conduit and locate it at great expense, upon another route. The water company was denied compensation for the expense so necessarily incurred.  (478)

By an ordinance adopted subsequent to the commencement of the work, and an agreement pursuant thereto, it was provided that the railroad companies, a certain tramway company, and the city, should each bear one third of the expense of the improvement, and that the tramway company should have the right to use a specified width of the subway, on one side thereof for the passage of its cars, and should maintain this portion of the subway in repair, the same being separated from the residue by a fence. It did not appear nor was it claimed that if the city had constructed the subway at its own expense, the grade or dimensions would have been different from those specified in the contract.  *Held* that inasmuch as the franchise granted to the tramway company had in no way increased the burdens of the water company, it afforded no change in the rule.  (480, 481)

Certain engineers testifying as well as for the water company as for the City agreed that at another location the damages to the Water Company would have been less; but *held* that the judgment of the city authorities as to the location of the improvement was conclusive unless it was made clearly to appear that their selection of the route was unreasonable, or dictated by some fraudulent purpose; there being no evidence of this character, nor what it would have cost to construct the subway over the other route, the claim of the Water Company that it was unnecessarily damaged by the location of the subway at the point selected was rejected. (481)

2. Constitutional Law—*Taking Private Property.* The improvement of the street by the City, rendered necessary by a change in the pipes of a water company located therein by authority of a municipal franchise is not the taking of private property. (479.)

3. County Roads—*Easement In.* That an easement granted by the owner of the abutting land to lay and maintain in a county road, pipes for conducting water, is, like a similar easement in the streets of a city subordinate to the paramount right of the public to subject it to the public use, when necessary, without compensation.

The rule is the same when the easement is obtained in a county road which afterwards becomes part of the public street of a city. When the lands are brought within the limits of the city, the road becomes at once subject to the control of the municipal authorities. Changing the grade, or constructing a subway therein is not an additional servitude. (482)

4. Eminent Domain—*Future Damages.* All damages, present or prospective, which are the reasonable and necessary result of an improvement, are taken into account, and compensation awarded therefor; but not speculative damages which may by possibility result from future municipal action, for a different purpose. (482, 483)

5. Costs. Section 6598 of the Revised Statutes is not unconstitutional. *Dolores Co. v. Hartman*, 17 Colo. 138, and *Denver Co. v. Howe*, 49 Colo. 256, distinguished. (483)

*Error to Denver District Court.*—Hon. Greeley W. Whitford, Judge.

Mr. Gerald Hughes, Mr. Barnwell S. Stewart, Mr. John Q. Dier, and Messrs. Hughes & Dorsey, for plaintiffs in error.

Mr. I. N. Stevens, Mr. Geo. Q. Richmond, and Mr. C. K. O'Byrne, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Defendant in error instituted proceedings under the provisions of article 4, chapter 147, Revised Statutes, 1908, against plaintiffs in error and others, to acquire property for the purpose of opening, widening, and extending West Alameda Avenue west. This avenue is intersected by numerous railroad tracks, and the purpose of the proceedings was to provide for the construction of an open cut subway underneath these tracks, to be used in connection with the avenue as extended, whereby grade crossings would be avoided. The title to part of the property involved, embraced in the west part of proposed extension, was held in trust for the use and benefit of the Water Company by the other plaintiffs in error, through which the company had constructed water mains and other appurtenances in connection with its waterworks system. Connected with these appurtenances it had placed a twenty-four inch pipe line in that part of the avenue adjacent to and intersected by the railroad tracks, and also in what is known as County Road No. 44, which runs west from the west end of the avenue, as it existed when the proceedings were commenced, to the lands held in trust for the Water Company. It had also constructed in these several highways, and in County Road No. 48, which runs in a northwesterly direction from the end of Road No. 44, abutting the lands of the Water Company on the east, a twelve inch pipe line, which extended to South Jason street on the north.

The Commissioners appointed filed a report fixing the damages which the company would sustain in removing and reconstructing its twenty-four inch pipe line at the sum of $8.92 per foot, for so much thereof as it would be necessary to remove and reconstruct as a result of the change of grade and excavation for the subway. To this part of the report the city filed objections, in so far as it awarded compensation for condemning the twenty-four inch pipe line and right of way or easement therein in

County Roads numbered 44 and 48, and West Alameda avenue, based upon the ground that these pipe lines were in public highways of the municipality, to which the company replied, that the construction of the subway would result in the destruction of the twenty-four inch line in the ground occupied by the subway, and that it would have to be replaced by a new line on a new route. It also replied, that the portion of its twelve inch pipe line within the site of the subway would be destroyed and would have to be replaced by a new line over a new route.

The issues thus made were tried to the court. It appears from the testimony that the use of West Alameda avenue by the company for the construction and maintenance of its water works system was authorized by a franchise from the City of Denver and a contract with the city, and that the company had an easement or right of way in perpetuity by deed in County Road No. 44, from the owner of the abutting property for its twenty-four inch pipe line. These roads were established in 1881, and the deed was obtained subsequent to that date. Prior to obtaining this deed, the territory embracing the portions of these roads involved was annexed to the city, and the deed in question was obtained after that was done. By the terms of the franchise and contract the city did not thereby expressly covenant that the pipes when laid in the streets should not be removed or disturbed, in the event a change of grade in such streets was ordered, or other public improvement therein made. In other words, the franchise and contract were silent on this subject. The city admitted that it would be necessary for the company to reconstruct its twenty-four inch pipe line from a point substantially at the east end of the subway to a point in the premises held in trust for the company abutting the end of County Road No. 44, adjoining County Road No. 48. The city offered to obtain and furnish the company with a new right of way for the reconstruction of this line, and in view of that proposal the Water Company agreed to limit its claim for damages in this connection to the cost of reconstruction. It is also admitted that the

twelve inch line would have to be removed from the east end of the subway through the avenue, County Roads Numbers 44 and 48, above mentioned, and reestablished from a connection with the new twenty-four inch line to a connection with the old twelve inch pipe line in South Jason street. The testimony established that the expense of such removal and reconstruction would entail an expense of over twelve thousand dollars. The city also admitted that a part of the twenty-four inch pipe line, located in the premises held in trust for the company, would have to be reconstructed over a new route, and a part of the line within these premises lowered. The court found that 283 feet of the 24 inch pipe line, within these premises, would have to be removed in part, and part lowered, at an expense of $10.00 per foot, and awarded the company the sum of $2,830.00 damages on this account, and refused to allow damages for the removal and re-construction of any other part thereof, or for the twelve inch line, for the reason that these lines were in a public highway of the City and County of Denver.

On the part of plaintiffs in error it is claimed that the trial court erred in refusing to allow the Water Company damages for taking and depriving it of its right of way through that portion of West Alameda Avenue as it existed at the time the proceedings in condemnation were instituted. In support of this claim it is urged that the right which the company acquired by its franchise and contract with the city to place and maintain pipe lines connected with its water works system in this part of the avenue, is a property right of which it cannot be deprived without just compensation, and that its damage in this respect is the expense incurred in removing and reconstructing this part of its pipe lines over a new route.

The prime purpose of a street is to provide a way for the use of the people at large for travel on foot and in ordinary vehicles. The power to grade streets and construct subways for the safety and convenience of the

public is vested in the city authorities. They may grant an easement in its subsurface in the manner and for the purposes by law provided, but the right thus granted is not absolute. It is only qualified. Placing pipes in the avenue under the franchise granted by the city, and contract to which we have referred, did not give the Water Company a vested right to have them remain as placed and undisturbed. The rights thus granted were subordinate to the rights of the public therein, and subject to the power of the municipal authorities to make such reasonable changes in the grade or an improvement therein as in their judgment the public interests demanded and required. Consequently, the Water Company is not entitled to be compensated for the expense incurred in removing and reconstructing its pipe line over a new route, which was necessitated by a change of grade and the construction of the subway. Refusing reimbursement for such expenses is not taking property for a public use without just compensation. *Columbus Gas & Coke Co. v. City of Columbus,* 50 Ohio. St. 65, 33 N. E. 292, 19 L. R. A. 510, 40 Am. St. Rep. 648; *Matter of Petition of Deering,* 93 N. Y. 361; *Stillwater Water Co. v. City of Stillwater,* 50 Minn. 498, 52 N. W. 893; *Anderson v. Fuller,* 51 Fla. 380, 41 South. 684, 6. L. R. A. (N. S.) 1026, 120 Am. St. Rep. 170; *Scranton Gas & Water Co. v. Scranton City,* 214 Pa. 586, 64 Atl. 84, 6 L. R. A. (N. S.) 1033, 6 Ann. Cas. 388; *City of San Antonio v. San Antonio St. Ry. Co.,* 15 Tex. Civ. App. 1, 39 S. W. 136; *New Orleans Gas & L. Co. v. Drainage Commission,* 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831.

If the proper officials of a municipality could not exercise their authority or discharge their duty to make such reasonable changes in the grade of a street or an improvement therein, as in their judgment the convenience and safety of the public require, except by first making compensation to any utility corporation which had previously acquired an easement in the street, their authority and duty would be seriously interfered with.

Counsel for plaintiffs in error also base their argument that the Water Company is entitled to damages in the particulars under consideration upon the proposition that the right granted it by its franchise and contract with the city, is an easement which cannot be damaged without compensation, when damages occur as a result of putting a street, in which the easement existed, to an extraordinary and unusual use by the construction of a subway, and liken the right of the Water Company to compensation in such circumstances to the right of an abutting lot owner to damages. It will be conceded that the easement thus acquired was property, but as stated, it was subject to the right of the municipal authorities to make reasonable changes in the grade of the street. It was not a right like an abutting property owner, whose right to compensation for putting a street in front of his premises to an extraordinary use, arises from the fact that he is such owner. He acquires no interest in the street from the city, but his interest therein attaches by virtue of his ownership of the abutting lot, as an incident to it, while in the case of the Water Company it has no interest whatever in the abutting property, but its rights are limited and measured by the legal conditions under which its easement in the street is granted. *Columbus Gas & Coke Co. v. City of Columbus, supra; Scranton Gas & Water Co. v. City of Scranton, supra.*

By an ordinance duly passed provision was made for widening, extending and establishing West Alameda Avenue west. Pursuant to this ordinance, the condemnation proceedings were commenced by the city. Subsequently, by virtue of an ordinance a contract was entered into between the city, The Denver Tramway Company and the railroad companies owning and operating the tracks intersecting the avenue, whereby it was agreed that each should bear one third of the expense of constructing the subway, which should include the costs and damages awarded by virtue of the condemnation proceedings then pending in the name of the city. It further provided that

the Tramway Company should have the right to use the south twenty-six feet of the subway for street car, suburban railway or railroad purposes. The Tramway Company was required to keep and maintain this portion of the subway in repair at its own expense, while the city obligated itself to maintain the other part of the subway as a road way. We assume from the language of the contract that the Tramway Company had the right to lay tracks over and along the avenue in which the subway is constructed. Except where the tramway tracks cross the subway, substantially at its east end, the road way and the part occupied by the Tramway Company are divided by a fence. It is claimed that by this contract, and the fact that the public is excluded from the portion of the subway occupied by the Tramway Company, the right of way and easement of the Water Company are taken and condemned for the use and benefit of the Tramway Company, and hence, the construction of the subway must be deemed an unusual and extraordinary change in the grade of the street and character of its use, which entitles the Water Company to be compensated for the damages resulting from the removal and reconstruction of its pipe lines.

We do not regard this contention as tenable. The city had the right to condemn for the purposes of constructing a subway and extending and widening the avenue. So far as advised from the record or briefs of counsel, the city had the right after the subway was constructed to grant the Tramway Company the use of a part thereof for street car purposes. It does not appear, nor is it claimed, that had the city constructed the subway at its own expense, the grade and dimensions would have been any different from the grade and dimensions provided in the contract. So that the contract with the tramway and railroad companies, the right granted the former by its terms, and the construction of the subway in accordance with its provisions, have not resulted in imposing upon the Water Company any greater burden than would have been imposed had the contract by which the

city was relieved of part of the expense of constructing the subway, not been executed. In other words, had the city constructed the subway at its own expense, the Water Company would have been compelled to relay its pipe lines regardless of the right granted the Tramway Company, and the damages sustained by the Water Company by the construction of the subway, are not in any manner increased by granting the Tramway Company the rights acquired under the contract.

The civil engineers who testified, both for the city and the Water Company, agreed that from an engineering and also a railroad standpoint, a better location for the subway would have been along West Byers Place, a street north of West Alameda Avenue. It is claimed that if the subway had been constructed in the street mentioned the damages to the Water Company would have been much less.

There appears to be some basis for this claim, and it is therefore urged that there has been unwarranted interference with the rights of the Water Company in West Alameda Avenue. We are not advised from the record what the expense of constructing a subway in West Byers Place would have been as compared with the expense of constructing it over the route selected. All that is said on the subject by the engineers is to the effect that West Byers Place was a more feasible route for the construction of the subway. What is meant by this is left to mere conjecture. The city authorities were vested with sound discretion in locating the subway, and the exercise of this discretion and judgment is conclusive, unless it clearly appears that their action was fraudulent or unreasonable. *City of Denver v. Kennedy*, 33 Colo. 80, 80 Pac. 122, 467.

It is next urged that the court erred in refusing to allow the company damages for the expense of removing and reconstructing its pipe lines through the portion of County Road No. 44, now a part of the avenue as extended, for the reason that the company had acquired an easement from the abutting property owner to lay

and maintain its pipes therein. It may be conceded, without definitely expressing an opinion, that the owner of property abutting a highway may make such use of the land within the latter as will not interfere with its use for public travel, and that he may transfer this right to others. Such right however, is subordinate to the paramount right of the public to require the. abutting land owner to discontinue such use without compensation, when the public use to which it may lawfully be subjected necessitates this course. Nichols, Power of Eminent Domain, section 71. Nor does the fact that the easement was obtained in what was formerly a part of a County Road change the situation. When this part of the road was included within the limits of the municipality it became subject to the control of the municipal authorities, and constructing a subway therein, or changing the grade thereof, for these purposes is not an additional servitude upon the abutting lands. *Ehret v. Camden & T. R. Co.*, 61 N. J. Eq. 171, 47 Atl. 562; *Hiss v. Baltimore & H. P. R. Co.*, 52 Md. 242, 36 Am. Rep. 371. Hence the right which the abutting owner coneveyed the Water Company in these highways is subject to the authority of the municipality to construct the subway without compensating the Water Company for such right.

Through a portion of the land owned by the Water Company taken for the street as extended, lying west of the part in which the pipe line was in part reconstructed and in part lowered, the company had a twenty-four inch pipe line which was not disturbed. It is claimed, however, that damages should have been allowed or assessed for the easement remaining, because at some future time the city may require the company to shift its pipe line or remove it, and therefore the assessment should have embraced this contingency. In support of this, *Denver City I. & W. Co., v. Middaugh,* 12 Colo. 434, 21 Pac. 565, 13 Am. St. 243 is relied upon. The case is not in point. True, in assessing damages in condemnation proceedings, all damages present and prospective, that are the natural, necessary or reasonable incident of the improvement for

which the property is taken should be assessed. But this does not apply to the contingency of future action on the part of the city which might necessitate the removal of the pipe or other change, as that is dependent upon such action. In other words, should the company be required at some time in the future to shift or remove its pipe line in the road way through its private lands taken for street purposes, the expenses thus incurred are in nò sense the natural, necessary or reasonable incident of the taking at this time.

By the decree of the trial court it was provided that petitioner pay the costs up to the time of, and including the filing of the report of the Commissioners, and that plaintiffs in error pay the costs incurred by them subsequent to the filing of such report. With respect to costs the statute, section 6598, Rev. Stat., 1908, provides: "The costs of the proceedings up to and including the filing the report of the Commissioners shall be paid by the city, and as to any costs caused by subsequent litigation the costs shall be paid by the losing party." Counsel for plaintiffs in error contend that this provision is unconstitutional, for the reason that requiring a respondent in condemnation proceedings to pay any part of the costs is an infringement of his constitutional right to full and just compensation for taking and damaging his land. As applicable to this case we think not. If either party is dissatisfied with the award of the Commissioners, objections therto may be filed. If this course is pursued a new issue, so to speak, is presented, namely, whether the award should stand, and there can be no valid objection to taxing the costs in such proceedings to the losing party, although he be the respondent. He takes the chances when objections are interposed to the report if he contests them, of having them sustained, wholly or in part, and when he does so and is rightfully defeated, he ought to pay the reasonable costs entailed by such proceedings. This is a different proposition from taxing him with any part of the costs down to the time the Commissioners make their report, as that would reduce the amount of

compensation to which he ·is entitled before his property can be taken or damaged. There is some conflict in the decisions on the question presented, but we think the weight of authority upholds the statutory provisions under consideration, and that the taxation of costs in the particulars involved is controlled by the statute on the subject. ,

„  *Delores Canal Co. v. Hartman,* 17 Colo. 138, 29 Pac. 378, and the *D. L. W. & P. Co. v. Howe,* 49 Colo. 256, 112 Pac. 779, are not in point. Those cases involved the question of costs under the general eminent domain act.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Mr. Justice Hill not participating.