304     APPELLATE COURTS OF ILLINOIS.

Postal Tel. Cable Co. v. B. & O. C. Ter. R. R. Co., 219 Ill. App. 304.

## Postal Telegraph Cable Company of Illinois, Plaintiff in Error, v. Baltimore and Ohio Chicago Terminal Railroad Company, Defendant in Error.

### Gen. No. 25,873.

1. MUNICIPAL CORPORATIONS, § 887*—*what is extent of power of city as to public service corporations.* The occupancy of public highways by railroads and telegraph companies is at all times subject to the right of a city to compel relocation of conduits, wires and tracks as the city may see fit to require in a reasonable and just effort to provide for the public health, safety and convenience.

2. MUNICIPAL CORPORATIONS, § 83*—*what does not render ordinance mandatory.* The mere fact that an ordinance providing for the elevation of railroad tracks contains a provision that it is to become void if not accepted within 60 days after its approval, does not of itself establish a contractual relationship between a city and the railroad company involved.

3. MUNICIPAL CORPORATIONS, § 83*—*when ordinance is mandatory.* An ordinance providing for the elevation of railroad tracks, which clearly indicates a purpose to provide for the public welfare, under the police power, is something more than a mere offer to permit the railroad company to elevate the tracks and to construct subways for street openings, even though there is a provision requiring acceptance within 60 days, and providing that the ordinance is to be void if not accepted.

4. MUNICIPAL CORPORATIONS, § 892*—*what rule does not apply in determining liability for expenses incident to change of grade.* The rule that a railroad company is liable to an abutting owner for damage inflicted where its tracks are elevated and a grade crossing abolished does not apply where a track elevation ordinance requires changes in conduits, manholes, cables, etc., of a telegraph company occupying streets, as such telegraph company is not an abutting owner.

5. TELEGRAPHS AND TELEPHONES, § 4*—*when telegraph company is liable for expenses incident to change of grade of street.* Where in accordance with a city ordinance a railroad elevated its roadbed which required the depression of a street intersection and plaintiff telegraph company was thereby compelled to rebuild and lower its conduits, the railroad company was not liable to the telegraph company for the expense involved, there being no negligence in the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

performance of the work, and in addition there being the power of the city under its police power, and as reserved in the original ordinance, to order such changes.

Error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1920. Affirmed. Opinion filed October 11, 1920.

JACOB E. DITTUS and LEON A. BEREZNIAK, for plaintiff in error.

HENRY D. SHEEAN, for defendant in error.

MR. JUSTICE DEVER delivered the opinion of the court.

The plaintiff, Postal Telegraph Cable Company of Illinois, a corporation, on June 1, 1916, possessed certain conduits, manholes, cables, etc., which were laid down in South Cicero avenue at and near its intersection with Colorado avenue in the City of Chicago. The defendant, Baltimore and Ohio Chicago Terminal Railroad Company, operates a railway line in the City of Chicago; its right of way extends over and across the street intersection mentioned above.

The cause was tried in the circuit court of Cook county before the court without a jury on a stipulation of facts, which shows that October 22, 1906, the City of Chicago enacted an ordinance entitled as follows:

"An Ordinance requiring the Belt Railway Company of Chicago and the Chicago Terminal Transfer Railroad Company, respectively, to elevate the plane of certain of their roadbeds and tracks within the City of Chicago."

Section 1 of the ordinance provides:

"That the Belt Railway Company of Chicago and the Chicago Terminal Transfer Railroad Company are each, respectively, hereby ordered and required to elevate the plane of their roadbeds and tracks within the limits of the City of Chicago in manner and upon the conditions hereinafter specified, that is to say:"

The ordinance in its other provisions required the

306 . APPELLATE COURTS OF ILLINOIS.

Postal Tel. Cable Co. v. B. & O. C. Ter. R. R. Co., 219 Ill. App. 304.

elevation of the tracks and roadbeds in accordance with its terms.

Defendant is the successor of the Chicago Terminal Transfer Railway Company named in the ordinance. An amendment to the ordinance provided for a depression of the streets at the intersection mentioned, and it is stipulated that in performing the construction work required by the terms of the ordinance and the amendment thereto, the plaintiff was compelled to rebuild and lower its conduits at a total expense of $2,194.04. The stipulation provides that if the defendant is liable under the law, this sum with interest thereon is the correct measure of damages in the case.

It is also provided in the ordinance that:

"If in the construction of any of said subways and approaches it shall become necessary to disturb, remove or destroy any pipes, conduits, wires or other property belonging to any private corporation or individual, all of the cost and expense thereof, and all damage thereto shall be borne and assumed by the City of Chicago, and the said city * * * will save the said railway and railroad companies harmless from any and all claims, demands and suits arising therefrom and all damages which may be recovered therefrom."

The trial court held that the stipulation of facts did not authorize a recovery and a judgment was entered in favor of the defendant which the plaintiff seeks by writ of error to reverse.

The plaintiff had a right under an ordinance of the City of Chicago to place its conduits, cable, etc., under the surface of the streets at the intersection mentioned. The defendant, prior to the passage of the track elevation ordinance, was legally occupying parts of this intersection with its tracks. Both plaintiff and defendant are public utility corporations and their occupancy of the public highways was at all times subject to the right and power of the City of Chicago to compel a relocation of conduits, wires and tracks

as the city might see fit to require in a reasonable and just effort to provide for the public health, safety and convenience. The cases cited in the brief of counsel for defendant amply sustain this statement. *Scranton Gas & Water Co. v. City of Scranton,* 214 Pa. 586, 64 Atl. 84; *New Orleans Gaslight Co. v. Drainage Commission of New Orleans,* 197 U. S. 453.

The principal contention of plaintiff is that the ordinance which provided for an elevation of the tracks is not mandatory; that it is permissible only and was enacted for the benefit of the railway company; that the amendment to the ordinance which provided for a depression of the street intersection was adopted in the interest of the railway company; that no benefit accrued therefrom to the public, and that as a consequence the depression of the intersection which caused the injuries to plaintiff was an act of the defendant in its own interest which gave rise to a legal liability against it in favor of the plaintiff. We are unable to agree with this contention and the cases relied upon by plaintiff do not, in our opinion, support its position on this question.

It is conceded that the City of Chicago in the reasonable exercise of its police power has a legal right, where public safety or convenience requires, to change the grade of a street and that in so doing the city would be free from liability to a telegraph company whose conduits or property is disturbed in making the change.

In the case of *City of Vandalia v. Postal Tel.-Cable Co.,* 274 Ill. 173, an ordinance which required a telegraph company to remove certain of its poles and wires from the street which were placed therein under the authority of a prior valid ordinance, which did not provide for a relocation of the poles and wires, and where the purpose of the ordinance was merely to improve the appearance of the street, was held to be invalid.

In the case at bar the plaintiff was not specifically

mentioned in the ordinance and was not a party thereto, and the ordinance did not directly provide for the removal or relocation of its conduits.

The ultimate object to be attained by the passage of the ordinance was the elevation of defendant's railroad tracks. The amendment requiring the depression of the surface of the street became an integral part of the ordinance and in determining the purpose of the City Council in passing it, the amendment and the original ordinance should be read together. It is apparent from the language used that the intent of the City Council in enacting the ordinance was to prevent the inconvenience and danger to the public arising from the operation of railroad trains on the surface of the street, and the provision which provided for a depression of the street surface at Cicero avenue had no other object than that of providing a reasonable manner and method of changing the grade of the tracks. It may be quite true, as urged, that this particular provision of the ordinance tended to make the work less expensive, but it is reasonable to suppose that the City Council was moved to adopt the amendment so that the whole ordinance might, in a reasonable way, provide for an elevation of the tracks.

The ordinance was something more than a mere offer on the part of the City Council to permit the railroad company to elevate the tracks and to construct subways thereunder for street openings. While it provides that it was to become null and void if not accepted within 60 days from date of its approval, this fact in and of itself is not sufficient to establish a mere contractual relationship between the parties thereto. On its face the ordinance explicitly ordered and required defendant's predecessor to comply with its terms, and the language employed clearly indicates a purpose to provide, under the police power of the city, for the public welfare. The ordinance does not appear to have been enacted in the interests of the rail-

road companies against which it was intended to operate.

In *Stillwater Water Co. v. City of Stillwater,* 50 Minn. 498, 52 N. W. 893, the court said:

"When one acquires a right to use a street or highway for purposes of his own, the right is subject and must be enjoyed in subordination to the power of the public authorities to keep it in condition for public use, unless the express terms of the grant by which he acquired the right, or the nature of the right acquired by him, necessarily excludes or limits such power. So when under this ordinance the plaintiff acquired the right to lay pipes in the streets, that right was subordinate to the power of the city to establish grades and grade the streets."

In the case of *Moffat v. City and County of Denver,* 57 Colo. 473, 143 Pac. 577, the court said:

"The power to grade streets and construct subways for the safety and convenience of the public is vested in the city authorities. They may grant an easement in its subsurface in the manner and for the purposes by law provided, but the right thus granted is not absolute. It is only qualified. Placing pipes in the avenue under the franchise granted by the city, and contract to which we have referred, did not give the water company a vested right to have them remain as placed and undisturbed. The rights thus granted were subordinate to the rights of the public therein, and subject to the power of the municipal authorities to make such reasonable changes in the grade or an improvement therein as in their judgment the public interests demanded and required."

No question is raised as to the power of the City Council to pass the ordinance and to require and order compliance with its terms, and a reasonable interpretation of these terms does not, we think, indicate that by its mere refusal to accept the ordinance the defendant could decline to elevate its tracks. Quite the contrary is true. If defendant in fact had refused to accept the ordinance, the city would have been free to

impose the same terms by a mandatory ordinance which would not require acceptance; or it could have enacted a more burdensome ordinance which the defendant would have been bound to comply with if its terms were reasonable.

It is contended that where a railroad company accepts municipal authority to change a street grade for the purpose of abolishing a grade crossing and performs the work necessary to effect such change for its own interest, it becomes liable for injury inflicted upon an abutting property owner, even though the public is served by the making of the improvement. This may be conceded. The plaintiff is not an abutting property owner. If it were, a different question would be presented.

The Supreme Court of Pennsylvania in the case of *Scranton Gas & Water Co. v. City of Scranton,* 214 Pa. 586, 64 Atl. 84, said:

"Where a gas and water company is obliged to move its pipes from a street by reason of a change of grade, it can recover no damages from the city for the injuries sustained. * * *

"So far as property rights are concerned, there is but slight correspondence between the easement enjoyed by appellant company in the streets of the city and the rights of the abutting owners in their several properties. The distinctions between the two are too obvious for discussion. It is enough to say with respect to the former that it is held and enjoyed subject always to the earlier and superior rights of the public in the streets of the municipality. Among these is the power to regulate and control the streets in the interest of public health and safety. When these demand a change in the mode and manner of the enjoyment of the easement, or privilege, and that demand is expressed through the municipal authority, in the exercise of a reasonable discretion, that change must be made. Calling the legislative grant of privilege to use the streets a contract does not avoid the conditions on

which the privilege is to be exercised. Whether such limitation or conditions be expressed in the grant or not is immaterial, for as said in *Butchers' Union Slaughter-House Co. v. Crescent City Live Stock Landing Co.,* 111 U. S. 746, the power to control and regulate the streets so as to protect public health is one that cannot be bargained away by legislative or municipal grant. The power to control them for the protection of public safety, if not the same, stands on equally high ground. All authorities agree that such right is both paramount and inalienable. Nor is the right limited to the control of mere surface; it extends to the soil beneath to whatever extent it may be required in aid of such purposes as fall within the municipal function, in connection with the health and safety of the public.''

The assumption by the city of all damages occasioned by the disturbance of conduits and lines in the performance of the work required by the ordinance does not, as we read this provision, in any sense inure to the benefit of the plaintiff. Whether any right of action exists against the city is not determined in this opinion. In any event, it is clear that no action is maintainable by the plaintiff against the defendant. Defendant's conduct was required and ordered by the express terms of the ordinance. No claim is made that the work which caused injury to the plaintiff's property was performed negligently, or that it was unnecessary under the terms of the ordinance, and aside from the provisions relating to damages the city would not become liable for the disturbance of plaintiff's conduits and lines because it did not and could not waive its right under its police powers to compel a relocation of the conduits and lines as is required by the ordinance. Further than this, the right to require such changes is expressly reserved to the city in the ordinance granting privileges in the public streets to plaintiff.

In the case of *New Orleans Gaslight Co. v. Drain-*

*age Commission of New Orleans,* 197 U. S. 453, the Supreme Court of the United States dealt extensively with the question under consideration here. In its opinion that court said:

"The right of control seems to be conceded by the learned counsel for the plaintiff in error, in so far as it relates to the right to regulate the use of the surface of the streets, and it is recognized that the users of such surface may be required to adapt themselves to regulations made in the exercise of the police power. We see no reason why the same principle should not apply to the subsurface of the streets, which, no less than the surface, is primarily under public control. The need of occupation of the soil beneath the streets in cities is constantly increasing, for the supply of water and light and the construction of systems of sewerage and drainage, and every reason of public policy requires that grants of rights in such subsurface shall be held subject to such a reasonable regulation as the public health and safety may require."

It is not easy to believe that the city, by the language used in the ordinance, intended to assume in favor of the defendant or its predecessor a liability to pay damages for injuries to property resulting from the doing of the work required by the ordinance, where no legal liability was created by the ordinance or resulted from the doing of the work thereunder.

The judgment of the circuit court is affirmed.

*Affirmed.*

HOLDOM, P. J. and McSURELY, J., concur.