## Commonwealth ex rel. v. Heidelberg Township Water Co.

512

*George W. Kietel* and *Phil H. Lewis,* Deputy Attorneys General, and *James H. Duff,* Attorney General, for Commonwealth.

*Douglass D. Storey* of *Storey & Bailey,* and *Becker & Ehrgood,* for defendant.

HARGEST, P. J., June 1, 1943.—This matter comes before us upon a bill of complaint and answer thereto, which raises no questions of fact and only the question of law as to whether the pertinent act of assembly supports plaintiff's demand.

The case is therefore ripe for final decision.

The bill avers that defendant has occupied a portion of the right of way of a public road, known as State Highway Route 38002, in Lebanon County; that it has made openings in said roadway without obtaining a permit from the Department of Highways, and threatens to continue the practice of making openings without obtaining such permit.

The answer admits the fact, says that it will continue to make openings when necessary for the purpose of repairing its existing pipe lines, and that there is no act of assembly which requires such permit to be first obtained by it.

## Discussion

The controversy revolves around section 17 of the State Highway Act of May 31, 1911, P. L. 468, as amended by the Acts of June 26, 1931, P. L. 1388, and July 12, 1935, P. L. 946.

Defendant contends:

1. That the titles of the Acts of July 12, 1935, P. L. 946, and June 26, 1931, P. L. 1388, are insufficient to give notice of any intention to require permits for the opening of highways for the purpose of water companies' repairs;

2. That these amendments to section 17 of the Act of 1911 contemplate that permits should only be required to repair pipes that were laid in the highway subsequent to the passage of the act; and

3. That section 34, clause 2, of the General Corporation Act of April 29, 1874, P. L. 73, 15 PS §1403, vested rights in defendant which were not taken away or repealed by the State Highway Act of 1911 and the amendments above referred to.

The writer has heretofore had occasion to say (Stephano Bros. v. Secretary of Revenue, no. 441, Commonwealth docket 1942, no. 1625, Equity docket, opinion filed May 10, 1943) that the title to the Highway Act of 1911 is perhaps the worst example of an improper title to be found in the recent statute laws. A title is sufficient when it directs a reasonably intelligent man to the contents of the statute. The courts have been, in a multitude of cases, condemning long titles that tend to become an index or a synopsis of the act (Specktor et al. v. Hanover Fire Ins. Co., 295 Pa. 390; Commonwealth ex rel. v. Macelwee et al., 294 Pa. 569; New Castle City v. Withers, 291 Pa. 216; Commonwealth ex rel. v. Snyder, 279 Pa. 234; Sloan v. Longcope, 288 Pa. 196; Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421; Orlosky v. Haskell, 304 Pa. 57; Commonwealth ex rel. v. Liveright et al., 308 Pa. 35, 81) ; and have also been commending short titles.

The danger is that a title which purports to be an index may be misleading, in that it fails to give notice of the text.

In Minsinger v. Rau, 236 Pa. 327, 336, the court said: "A short general comprehensive title is more desirable than a long one which attempts to point out all the details of a statute."

And the dangers involved in titles which are both too long and too short are pointed out in Commonwealth v. Stofchek, 322 Pa. 513, 517, where it is said that the title of an act may be so general or so particularized as to include all of its subject matter, and yet so general as to give no indication of its purpose, or it may be so particular "as to inferentially exclude from its scope any items inadvertently omitted."

It is this last horn of the dilemma upon which it is contended the Act of 1935 is impaled.

The original Act of May 31, 1911, P. L. 468, had a title containing a complete synopsis of the act, and the title has been enlarged from time to time to indicate the purpose of the various amendments.

The Act of June 26, 1931, P. L. 1388, amended certain sections, including section 17 of the original act, and added to the title, as it theretofore existed, the following:

"By providing for the recording of certain plans in the office of the Department of Highways; regulating the payment of damages for land taken for future construction; making it the duty of the Department of Highways to require an additional bond conditioned for the payment of labor and materials; *providing for the restoration of highways opened under permits, and providing penalties for opening of highways without permits;* providing for the payment of damages for changing of grades or location of connecting roads by the county; *authorizing certain charges and restoration fees for permits;* authorizing payment for certain

materials delivered on site of work; specifying minimum width of surface construction." (Italics supplied.)

Section 17, as amended in 1931, provided, inter alia:

". . . nor shall . . . any gas pipe, water pipe, electric conduits, or other piping, be laid upon or in . . . or any other obstructions, be erected upon or in any portion of a State highway or State-aid highway, except under such conditions, restrictions, and regulations, and subject to the payment of such fees for permits, as may be prescribed and required by the Department of Highways . . . Any person failing to obtain such a permit before doing any work on any highway for which a permit is required by this section shall, for every such offense, be sentenced . . . The Secretary of Highways is empowered to make reasonable rules and regulations governing the use of all State highways and State-aid highways . . ."

There can be no doubt that the addition to the title in the 1931 amendment gives sufficient notice of what is contained in section 17 as to the requirement for permits and the restoration of the highways opened under such permits.

But the difficulty comes with the blundering amendment to the title by the Act of July 12, 1935, P. L. 946, which amended section 17. That title struck out completely all that was added to the title by the Act of 1931, which is hereinbefore quoted, and substituted the following:

". . . by providing for the abandonment of sections of State Highway Routes; providing an effective date for the condemnation of easements for highway purposes and slopes; providing for the limitation of the responsibility of the Commonwealth in the elimination of grade crossings; extending the Commonwealth's obligation to additional bridges; providing for agreements by the Secretary of Highways and counties for

the sharing of property damages and the removal of structures; *requiring occupancy permits for additional types of structures.*" (Italics supplied.)

The only possible reference to permits for the opening of highways or for penalties for such opening without permits is in the last words above italicized, "requiring occupancy permits for additional types of structures." By no stretch of any linguistic imagination could this language give any notice of what is contained in the amendment to section 17. That amendment, with the eliminations in brackets and the additions italicized, is as follows:

". . . nor shall . . . any gas pipe, water pipe, electric conduits, or other piping, be laid upon, *over, under*, or in, . . . or other [obstructions] *structures*, be erected upon, *over* or in any portion of a State highway or State-aid highway, *nor shall any opening be made therein*, except under such conditions, restrictions, and regulations, and subject to the payment of such fees for permits *for the placing of such structures and openings*, as may be prescribed and required by the Department of Highways . . ."

A title which requires "permits for additional types of structures" gives no notice that the body of the act contains provisions for permits for openings in highways. In the ordinary use of language, the word "structures", which was substituted in the amendment of 1935 for "obstructions" in the 1931 amendment, would hardly be considered to include a hole in the street while "obstructions" would. A hole would clearly obstruct passage.

It is particularly clear that the title gives no notice that the body of the section deals with permits for openings when, upon examining the title to the Act of 1931, it is seen that all reference to requiring permits for openings of highways was stricken out. We need not labor the matter any further. The conclusion is irresistible that section 17 of the amendment of 1935

to the Highway Act, insofar as it relates to permits for openings in highways, is unconstitutional, because no notice of such a requirement is contained in the title.

This, however, does not destroy the application of the section as to openings. We are of opinion that section 17, as amended in 1931, provides for permits for openings in highways under the regulations of the Highways Department. The text provides that no "gas pipe, water pipe, electric conduits, or other piping, be laid upon or in, . . . or any other obstructions, be erected upon or in any portion of a State highway or State-aid highway, except under such conditions, restrictions, and regulations, and subject to the payment of such fees for permits, as may be prescribed and required by the Department of Highways . . ."

An opening for the purpose of repairing a water pipe is certainly an "obstruction" in a "portion" of a highway, and therefore within the plain language of section 17 as contained in the 1931 amendment; and the title provides specifically for the "restoration of highways opened under permits" and for "penalties for opening of highways without permits."

It therefore appears that the amendment of 1931 stands unaffected by the unconstitutional attempt to amend it insofar as permits for openings in highways are concerned.

2. Defendant contends that these amendments to section 17 contemplate that permits shall only be required to repair pipes which were laid in the highway subsequent to the passage of the Act of 1911.

The highways, except privately-owned turnpikes, were originally owned by the Commonwealth, and, as was said in Westmoreland Chemical & Color Co. v. Public Service Commission, 294 Pa. 451, 456, and repeated in Bell Telephone Co. v. Lewis, 317 Pa. 387, 390, the Commonwealth may set up any agency to control and maintain them. In the course of time, the Com-

monwealth did vest a large portion of the highways in the counties, townships, cities, and boroughs, and, by the Highway Act of 1911 and its amendments and supplements, took many of them back. But in this operation neither the State nor the municipalities were ever relieved from their responsibility concerning the highways. And, as said in Breinig et ux. v. Allegheny County et al., 332 Pa. 474, 479:

"The right of way over land taken for highways, streets, and bridges, is the property of the State, and the public use of such facilities comes from that ownership. In most instances of taking, as stated above, the State merely acquires the easement or right of way, though there are many cases where the title to the highway is taken in fee. In either case the ownership is in trust for public use generally, for transit only, duly considering the rights of all members of the traveling public. The right of passage includes the right, as against other members of the traveling public, to stop temporarily for business necessity, accident or the ordinary exigencies of travel. It also includes the right to a reasonably safe passage, which may be enforced through the police power even though the abutting owners' rights be diminished thereby."

Section 3 of article XVI of the Constitution of Pennsylvania provides:

". . . the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State."

There is no doubt that, under the governmental duty resting upon the Commonwealth to build, maintain, improve, and control its highway system, it has the right to protect its easement for public travel and keep the roads constantly in repair "clear of all impediments to easy and convenient passing and travel": Chartiers Township v. Langdon, 114 Pa. 541; Greene County v.

Center Township, 305 Pa. 79, 86, 87; Breinig et ux. v. Allegheny County et al., supra; Commonwealth v. Funk, 323 Pa. 390; Farmers-Kissinger Market House Company, Inc., v. Reading et al., 310 Pa. 493.

In carrying out its responsibilities the Commonwealth may require a water company to move its pipes, without further condemnation, where a change of grade has made such removal necessary: Lewistown-Reedsville Water Co. v. Hughes, Secretary, et al., 49 Dauph. 18. It may impose other regulations in carrying out its duty to the public: Breinig et ux. v. Allegheny County et al., supra; Farmers-Kissinger Market House Company, Inc., v. Reading et al., supra; McCarthy et al. v. The Pennsylvania Land & Improvement Company, Ltd., 5 Pa. Superior Ct. 641; Philadelphia v. Teller, 50 Pa. Superior Ct. 260.

In Scranton Gas & Water Co. v. Scranton City, 214 Pa. 586, 590, in discussing the relative rights of the water company and the abutting property owners, the court said:

"It is enough to say with respect to the former, that it is held and enjoyed subject always to the earlier and superior rights of the public in the streets of the municipality. Among these is the power to regulate and control the streets in the interest of public health and safety. . . . Calling the legislative grant of privilege to use the streets a contract does not avoid the conditions on which the privilege is to be exercised. Whether such limitation or conditions be expressed in the grant or not is immaterial, for, as said in Butchers' Union Slaughter House Co. v. Crescent City Live Stock Landing Co., 111 U. S. 746, *the power to control and regulate the streets so as to protect the public health, is one that cannot be bargained away by legislative or municipal grant. The power to control them for the protection of public safety, if not the same, stands on equally high ground. All authorities agree that such right is both paramount and inalienable. Nor is the right limited to the control of the mere surface; it ex-*

*tends to the soil beneath, to whatever extent it may be required in aid of such purposes as fall within the municipal function, in connection with the health and safety of the public . . ."* (Italics supplied.)

It follows, of course, that the right secured by defendant to lay water pipes in the highway is not paramount to the police power of the Commonwealth, which it has seen fit to exercise under the authority of the Highway Act of 1911. It provided in section 17 of the original act that "the State Highway Commissioner is empowered to make rules and regulations governing the use of all State highways."

The State could not divest itself of its police power, and therefore the contention is untenable that the exercise of this power under the Act of 1911 can extend only to require permits for the repair of pipes which were laid in the highway subsequent to the passage of the act.

In this connection, also, it may be said that the exercise of the police power has been regulated by section 1 of the Act of May 9, 1929, P. L. 1702, 36 PS §2202, relating to detours. This section provides that, except in case of emergencies where the safety of the public would be endangered, ". . . no public road or highway in this Commonwealth shall be closed to vehicular traffic, except upon order of the authorities having charge of the maintenance of such highways, nor for a longer period than is necessary for the purpose for which such order is issued . . ."

If the contention of defendant in this case be sound, it could tear up a highway to repair its pipes, in defiance of the rights of the traveling public, without any permit from the Highway Department, merely because it had secured the right to lay those pipes before the Highway Act was passed. The power to regulate the openings in highways, and to require permits therefor, rests in the Commonwealth without regard to when pipes were laid under the surface of the highways.

3. It is contended that section 34, clause 2, of the General Corporation Act of April 29, 1874, P. L. 73, 15 PS §1403, gives a vested right to defendant, which is not taken away or repealed by the Highway Act of 1911 and its amendments.

From what has already been said, we have demonstrated that there is no such vested right given by the Act of 1874, even if the statute so provided, because the legislature could not fritter away the police power in that manner.

But while clause 2 of section 34 of the Act of 1874, which relates to water and gas companies, gives the right to such companies to enter upon the streets and highways and to occupy them for the original construction and subsequent repair, the section specifically provides as to water companies: ". . . subject to such regulations in regard to streets, roads, lanes and other highways, as is provided in the foregoing section for gas companies . . ." And as to gas companies it is provided in clause 1: ". . . subject to such regulations as the councils of said borough, town, city or district may adopt in regard to grades, or for the protection and convenience of public travel over the same."

Assuming that the grant had the elements of a contract, when the Commonwealth took back to itself any highways in which the right of construction and repair had been given it also took back to itself whatever rights the municipalities had under the Act of 1874. However, it is now settled that even under the Act of 1874 there was no such vested right ever given, or attempted to be given, which could affect the exercise of the police power over the highways: Bell Telephone Co. v. Lewis, supra; Springfield Water Co. v. Darby, 199 Pa. 400; Scranton Gas & Water Co. v. Scranton City, 214 Pa. 586.

For these reasons we are of opinion that defendant had no right, under the Highway Act of 1911, or in

disregard of it, to open the highway for the purpose of making repairs, without first securing the permit required by the act.

### Decree

And now, June 1, 1943, the facts having been admitted, and the answer of defendant raising only questions of law, it is hereby adjudged and decreed that an injunction be issued restraining defendant, its agents and employes, from making any openings in State Highway Route 38002, or any other State highway route, without first applying for, and receiving, a permit from the Department of Highways.