# Commonwealth ex rel. v. Uwchlan Street Railway Company, Appellant.

*Street railways—Extensions—Construction of road—Act of June 7, 1901, P. L. 514—Conflicting claims to streets.*

When a street railway company organized under the Act of June 7, 1901, P. L. 514, has resolved upon an extension, has had its resolution recorded, and has duly filed an exemplification of this record in the office of the secretary of the commonwealth, it has done everything required of it to establish an extension, and is immediately invested with a franchise, with an exclusive privilege in the streets covered by the extension. The provision in the 14th section of the act of June 7, 1901, merely postpones " the right to actually construct " the extension for thirty days after the date of filing the exemplification. If, therefore, a second company is chartered within the thirty days to construct a railway over the same streets, its charter is invalid and will be forfeited by quo warranto proceedings.

*Constitutional law—Street railways—Occupation of tracks by second company.*

Section 14 of the Act of May 14, 1889, P. L. 211, as amended by the Act of June 7, 1901, P. L. 514, giving one street railway company the right to use the tracks of another street railway company for certain prescribed distances is unconstitutional.

Argued May 12, 1902. Appeal, No. 117, Jan. T., 1902, by defendant, from judgment of C. P. Chester Co., Oct. T., 1901,

No. 13, on verdict for plaintiff in case of Commonwealth ex rel. John P. Elkin, Attorney General, v. Uwchlan Street Railway Company. Before McCollum, C. J., Dean, Brown, Mestrezat and Potter, JJ. Affirmed.

Quo warranto against a street railway company.

The writ was as follows:

To the sheriff of said county, greeting: We command you that you summon the Uwchlan Street Railway Company, so that it be and appear before our court of common pleas, to be holden at West Chester, in and for the said county of Chester, on October 28, next, and then and there to show by what authority it exercises within the said county the liberties and franchises following, to wit: of a street railway company, under its articles of association and letters patent issued thereon on July 10, 1901, and to show cause why said letters patent should not be declared void, and have you then and there this writ.

At the trial the jury under the directions of the court rendered a verdict in favor of the plaintiff. Subsequently a new trial was refused and judgment entered on the verdict, Butler, J., filing the following opinion:

In this action the commonwealth of Pennsylvania seeks a forfeiture of defendant's charter, urging that it was voidable when granted, that it was issued in direct antagonism to the following prohibition contained in the 1st section of the railway Act of June 7, 1901, P. L. 514: " But whenever a charter, after the approval of this act shall be granted to any company to build a road as provided by this act, no other charter to build a road on the same streets, highways, bridges or property, shall be granted to any other corporation."

The following undisputed facts were developed at the trial: On June 10, 1901, under the above recited act and the railway act of 1889, to which it is a supplement, a charter issued to the Coatesville & Downingtown Railway Company to construct a road over a route including Brandywine avenue, a street extending from the southern limits of the borough of Downingtown north to Lancaster avenue, a distance of about 1,600 feet. On June 26, 1901, an exemplification of the record of an extension by the Coatesville & Downingtown Railway Company

over Wallace avenue, a street extending from the terminus of Brandywine avenue at Lancaster avenue to the northern limits of the borough, a distance of about 2,600 feet, was filed in the office of the secretary of the commonwealth. On July 10, 1901, a charter was issued to defendant to construct a road over a route including Wallace and Brandywine avenues. The Coatesville & Downingtown Railway Company promptly sought municipal consent to the construction of its road, but has failed to obtain that of the borough of Downingtown. The defendant has secured the requisite consent from the borough and has proceeded to construct its road.

When the evidence was in, plaintiff's counsel asked for binding instructions against the defendant, on the ground that under the language of the act of assembly and the facts above recited, the defendant's charter was issued in violation of law, and was therefore void. Counsel for the defendant suggested that, as the questions involved would be fully discussed and considered on motion for new trial, he did not care to make an argument in opposition to plaintiff's request for binding instructions, and was content that the court should act on plaintiff's motion in accordance with the impressions it might entertain. A verdict was therefore directed against the defendant.

In support of its motion for a new trial, the defendant urges that when on July 10, 1901, its charter issued, the Coatesville & Downingtown Railway Company did not possess a charter to build a road over Brandywine and Wallace avenues; that while the charter of that company issued on June 10, immediately secured to it the right to occupy Brandywine avenue, the amendment to the charter route, the exemplification of the record of the extension over Wallace avenue filed in the office of the secretary of the commonwealth on June 26, was ineffectual to secure that avenue to the Coatesville & Downingtown Company until after the expiration of thirty days, or until after July 26, a date subsequent to that upon which the defendant received its charter. The defendant, depending upon this proposition, contends that its route over Wallace and Brandywine avenues coincided with that previously secured by the Downingtown & Coatesville Company only upon Brandywine avenue, a distance of about 1,600 feet, and claiming that under the act of 1901, a coincidence of routes not in excess of 2,500

feet is permitted, urges that the issuance of its charter was not in violation of the prohibition contained in the act of 1901.

Can the provision found in the 4th section of the act of 1901, " and no right to actually construct the same (the extension) shall vest until after thirty days from the filing of said exemplification," be construed, as counsel for defendant has urged it should be, as deferring for thirty days not only the right to " actually construct," but also the vesting of a franchise in the route covered by the extension filed?

The section under consideration gives to any company incorporated under the act authority to adopt extensions, and as requisite to the establishment of an extension, exacts no more of such company than that its resolution to extend over a route described shall be recorded in the appropriate recorder's office, and that an exemplification of this record shall be filed in the office of the secretary of the commonwealth.   When a company has resolved upon an extension, has had its resolution recorded, and has duly filed an exemplication of this record, it has done everything required of it to establish an extension, and is, we think, immediately invested with a franchise, with an exclusive privilege in the streets covered by the extension.   It is only the " right to actually construct " the extension which is deferred for thirty days after the date of filing the exemplification.   The prohibition to construct the extension for thirty days was introduced probably to secure a period within which, in advance of the streets being actually occupied by the extension, opportunity would be afforded for investigating the validity of the extension, so that in case it should be successfully attacked within the period, for some informality or substantial unsoundness, the streets would be protected from incumbrance.   As before stated, however, the legal adoption of an extension is consummated with the filing of the exemplification, and the franchise in the extension route must then immediately arise. In Hannum v. Media, etc., Railway Co., 200 Pa. 44, the court says : " Undoubtedly a company having a charter route and legally adopted extensions, may begin the construction at any point most convenient to itself. . . . there are here a trunk franchise and branch franchises."   This language of the Supreme Court is quoted as showing that a company secures its trunk, its main line franchise, when its charter is granted, and that it

secures its extensions, or branch franchises, when it has—as soon as it has— "legally adopted" them. A provision in the act of 1901 that there should be no actual construction of the charter road until thirty days after the issuance of the charter, could not be held to mean that no franchise, no exclusive privilege in the charter route would attach for thirty days. Neither can the provision that is in the act of 1901, prohibiting the "actual construction" of the extension for thirty days, be held to mean that no franchise, no exclusive privilege in the "legally adopted" extension route, attaches for thirty days.

The provision at the end of the section under consideration, "That no extension or branch shall be constructed on any street or highway upon which a track is laid . . . . under any existing charter, at the time of the filing of such exemplification," etc., is in itself a clear indication that a railway company's right to appropriate streets for an extension of its route depends upon conditions existing "at the time of the filing" of the exemplification, and that when "at the time of the filing" of the exemplification no obstacle to the adoption of the extension exists, the extension franchise over the streets covered, instantly arises.

To give to the prohibition to construct an extension until thirty days after filing the exemplification, the effect claimed for it by the defendant, would be to defeat the controlling scheme and purposes of the act of 1889 and its supplements. The policy of the commonwealth, as reflected in our street railway legislation, is that not more than one company shall be permitted to occupy a street. If, as is contended in behalf of the defendant, a company secures no franchise in the route of its extension until thirty days after its legal adoption, and consequently a second company, during the thirty days, can legally secure a charter covering the same route as the extension, then the way is open for two companies to obtain rights to build roads upon the same streets at the same time. At the end of thirty days the company that legally adopted an extension will be authorized to construct that extension, and the company incorporated during the thirty days with a coincident route, will be authorized to occupy the same streets. Applying the defendant's contention to its situation and that of the Coatesville & Downingtown Company, the result above pointed out is ex-

emplified.   On June 26 the Coatesville & Downingtown Company legally perfected the adoption of an extension over Wallace avenue.   Neither within the thirty days next ensuing, nor since, was any attempt made to question the validity of this extension, nor can it be doubted that in so far as the state could give authority, this company was invested with a right, after thirty days from June 26, to "actually construct" its road on Wallace avenue.   During these thirty days the defendant secured its charter to construct a road over Wallace avenue.   If defendant's proposition, that during the thirty days, the Coatesville & Downington Company had no franchise in its extension route which precluded the lawful issuance of defendant's charter, then has the state authorized both the Coatesville & Downingtown Company and the defendant company to build roads on Wallace avenue at the same time.   Such a situation, we are clear, is not intended by the law, and the defendant's contention that during the thirty days immediately following the Coatesville & Downington Company's adoption of the extension over Wallace avenue, the defendant could lawfully be invested with a charter franchise to occupy that avenue, is manifestly opposed to the obvious design of existing railway legislation that the streets and highways of the commonwealth shall not be occupied by more than one company at a time.

What the Supreme Court say in Homestead St. Ry. Co. v. Pittsburg, etc., Ry. Co., 166 Pa. 162, relative to the status of railway companies with conflicting routes, and the state's policy as to the occupancy of streets under the railway act of 1889, applies with equal force since the passage of the supplement of 1901 : " The language of the first section expressly limits even the right of incorporation, to such companies only, as are formed for the purpose of constructing, maintaining and operating a street railway on any street or highway upon which no track is laid, or authorized to be laid, or to be extended under any existing charter." That is, the statutory power of incorporation can only be executed in favor of a company which will construct and operate a railway on a street or highway upon which "no track is laid or authorized to be laid" under any existing charter. There can be but one meaning to these words, and that is, if the track is already laid, or even authorized to be laid, on the proposed street or highway, then there can be

no incorporation of such company. It cannot come into existence, and, as a matter of course, if a charter should be obtained in such circumstances, it would be simply nugatory; it could confer no power in hostility with the law of its creation. It seems to us that there can be no more convincing proof than this, that it is the settled, fixed policy of the commonwealth, as determined by this legislation, that there shall be no more than one lawfully authorized street passenger railway track laid upon the same street or highway at the same time.

As the result of a careful consideration of the position taken by the defendant's counsel, we are unable, for the reasons given, to sustain his contention. We are of opinion that immediately upon the Coatsville & Downingtown Railway Company filing the exemplification of the record of its extension over Wallace avenue, a franchise over that street vested in the company, by virtue of which at the end of thirty days, it had the state's authority to " actually construct " the extension. This being true, no charter could lawfully issue after June 26, the date of filing the exemplification, to another company to build a road upon a route including Wallace avenue.

As we find that the routes of the two companies are coincident over Wallace avenue, about 2,600 feet, as well as over Brandywine avenue about 1,600 feet, in all approximately 4,200 feet, it is not necessary to determine whether a coincidence of routes not in excess of 2,500 feet is sanctioned, as claimed by the defendant, or whether, as urged by the plaintiff, it is unlawful since the passage of the act of 1901, to incorporate a company with a route at all conflicting with that previously secured by an already existing company.

The defendant's second and final proposition in support of its motion for new trial, is, that if the law did not sanction the issuance of its charter, if through mistake its charter was granted in violation of law, the state is powerless to recall it; that the defendant had a right to presume when it obtained and paid for its charter, that it was lawfully issued, and advantage could not now be taken by the commonwealth of any error committed by its agencies.

We are unable to subscribe to this doctrine. The agencies of the state, representing the people, could confer upon the defendant only such franchises as the laws made by the people's

representatives sanctioned. The defendant took its charter with knowledge that if it was issued contrary to law, it was a nullity. The defendant and the commonwealth's agents were alike absolutely subject to the law and conditions controlling the issuance of the charter, and the defendant company was as powerless to take any advantage against the state, under a charter issued in hostility to the law of its creation, as were the state's agents powerless to give such a charter any life.

That the state can successfully demand the cancelation of a charter not authorized by law, whether the charter was issued wholly outside the provisions of any act of assembly, or whether, under legislation providing for the granting of such a charter, it was issued in direct and substantial antagonism to the provisions of such legislation, is not, we think, open to doubt. " We are in no doubt of the power of the court to revoke this alleged charter. It never was a charter. It was not authorized by any act of assembly, and is absolutely void. Had it been authorized by the act of 1874, it could only be reached by a quo warranto. But a void charter confers no rights, and the court below was justified in revoking the order which gave it an apparent validity: " National Endowment Co., 142 Pa. 450.

Prior to July 10, 1901, the Coatesville & Downingtown Railway Company, by virtue of its charter route and legally adopted extension, had a charter, had franchises from the state to build a road over Brandywine and Wallace avenues, a distance of about 4,200 feet. This being true, then under the unequivocal language of the acts of assemby by virtue of which the defendant took its charter, the issuance of that charter on July 10, 1901, purporting to authorize the building of a road over a route including Wallace and Brandywine avenues, was expressly forbidden, and what is said in the opinion of the court in Homestead Railway v. Railway, supra, exactly declares the resulting status of the defendant.

" There can be but one meaning to these words, and that is, if a track is already laid, or even authorized to be laid on the proposed street or highway, then there can be no incorporation of such company. It cannot come into existence, and as a matter of course, if a charter should be obtained under such circumstances, it would be simply nugatory; it could confer

no power in hostility with the law of its creation." While the defendant's charter purports to be a grant by the state of certain franchises, it is in fact, for the reasons given, a mere nullity, and the state is entitled to have it forfeited.

In determining the issue here framed between the commonwealth and the defendant, we have not been unmindful of the fact that a decision adverse to the defendant may in its present situation cause it serious injury, and may retard the construction of a railway between points which the community is interested in having connected. For these reasons the questions presented by this litigation have been considered with more than ordinary care by both members of the court, and the conclusion to dismiss the motion for new trial has been reached only after mature deliberation, has resulted in the conviction that no error was committed in instructing the jury to render a verdict in favor of the commonwealth.

The rule to show cause why a new trial shall not be granted is dismissed.

*Error assigned* was in directing verdict for plaintiff.

*J. Frank E. Hause,* for appellant.

*George Quintard Horwitz,* with him *John P. Elkin,* attorney general, *Albert B. Kelley* and *Thomas W. Pierce,* for appellee.

PER CURIAM, October 13, 1902 :

Under the general railway act of 1889, and supplements, a charter was issued June 10, 1901, to the Coatesville & Downingtown Railway Company to construct its road, on a route including Brandywine avenue in Downingtown to Lancaster avenue, a distance of 1,600 feet. On June 26, 1901, an exemplification for an extension on Wallace avenue to the northern limits of the borough, a distance of 2,600 feet, was filed in the office of the secretary of the commonwealth. On July 10, 1901, the appellant, the Uwchlan Railway Company, took out a charter to construct its railway on a route including two of the same streets already taken by appellee, Brandywine and Wallace avenues. The appellant failed to obtain immediately the consent of the borough of Downingtown to occupy the two

streets ; the appellee did obtain such consent.   The common-wealth, suggesting that the Uwchlan Railway Company had no authority under the facts, to a location on these streets, at her instance this quo warranto was issued.   At. the trial, the court below, pro forma, directed a verdict for plaintiff, reserving the right to consider the legal question involved on a motion for a new trial.   After full argument of this motion, the learned trial judge directed judgment to be entered on the verdict.   His reasons in the opinion filed are ample and con-vincing and on that opinion we affirm the judgment.   He very clearly shows  that the whole policy of street railway law here-tofore, has been, to prevent conflict as to routes on streets, be-tween rival companies, by prohibiting any incorporation of a company to adopt a street on which a track is laid or authorized to be laid : Homestead St. Railway Co. v. Pittsburg, etc., Rail-way Co., 166 Pa. 162.   As to the argument, that under sec-tion 14 of the act of 1889, and the amendments thereto in the acts of 1895 and 1901, authority is given, to even appropriate 2,500 feet of the rails laid on the same street or highway, it is sufficient to say, that in Appeal of Chester, Darby and Philadel-phia Railway Co. et al., argued February 10, 1902, opinion handed down this day, we have declared the amendments to that section of the act unconstitutional.

The judgment is affirmed.