Bell Telephone Company of Pennsylvania, Appellant, *v.* Pennsylvania Public Utility Commission.

530

Argued December 15, 1939.

Before KELLER, P. J.; CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*E. Everett Mather, Jr.*, with him *William H. Lamb*, for appellant.

*Herbert S. Levy,* with him *Harry M. Showalter,* for appellee.

*Frank Butler,* Assistant County Solicitor, with him *Walter P. Smart,* County Solicitor, for intervenor.

*Joseph A. Beck,* for intervenor, submitted a brief.

OPINION BY PARKER, J., April 11, 1940:

The question involved in this appeal is whether the Bell Telephone Company of Pennsylvania is entitled to be reimbursed for a loss it suffered as a result of a change it was compelled to make in the location of its underground conduits in a public street to make way for highway improvements and abolition of grade crossings inaugurated by the County of Allegheny to relieve a congestion in traffic and promote public safety.

The public authorities were confronted with a serious situation occasioned by the density of traffic at the south entrance to the Liberty Tubes in Pittsburgh. Approximately 52,900 vehicles were passing through the tubes each day. West Liberty Avenue extended in a southerly direction from the south entrance to the tubes and at a distance of two hundred feet therefrom was intersected at right angles by Saw Mill Run Boulevard, while near that intersection and to the west Warrington Avenue branched off from the boulevard to the north, making a second point of congestion. In addition to the ordinary vehicular traffic the situation was complicated by the tracks and crossings of the Pittsburgh Street Railways Company. Double tracks of that railway occupied Warrington Avenue, passed an intersection to Saw Mill Run Boulevard and then turned south at another intersection and occupied the center of West Liberty Avenue.

On November 5, 1938, an application was filed with the Public Utility Commission by the commissioners of the County of Allegheny seeking the approval of a

plan whereby Saw Mill Run Boulevard would be moved to the north so that it would pass above the entrance to the tubes thus eliminating the grade crossing of the boulevard and West Liberty Avenue and whereby the street car tracks would be removed from a portion of Warrington Avenue, from the boulevard and from the northerly eight hundred feet of West Liberty Avenue. A clover leaf, so-called, was provided for the movement of traffic to and from the higher highway to the lower one and a private right of way to the west of the former location was provided for the street railway company. At the point where the street car tracks returned to West Liberty Avenue the tracks, by reason of local topography, would be at a considerable elevation above the level of the avenue. It was proposed that the tracks pass above street traffic to the center of the avenue and then descend by a ramp for a distance of four hundred or five hundred feet.

Conduits of the telephone company were so situated that it was necessary to move those facilities to another location on the same street to make way for the supporting substructure of the ramp. The estimated cost of relocating the conduit was $13,500. It was also necessary to change the location of the facilities of a water company and a gas company. West Liberty Avenue and Saw Mill Run Boulevard were portions of state highway routes. The city by ordinance and the State Highway Department approved and consented to the plan.[1] The Public Utility Commission took jurisdiction, approved the plan and made findings and awards of damages.[2] The appellant complains particularly of

---

[1] The county relied for authority to undertake the improvements on The General County Law, Act of May 2, 1929, P. L. 1278, as amended (16 PS §1 et seq.), Act of April 7, 1933, P. L. 27, as amended (36 PS §172) and Act of June 12, 1919, P. L. 450, as amended (36 PS §411).

[2] The commission depended upon the Public Utility Law of 1937 and the Act of April 7, 1933, and amendments, supra, for its authority to act.

those portions of the orders of the commission dated December 7, 1938, and March 27, 1939, which were as follows: "IT IS FURTHER ORDERED: That any relocation, changes in, or removal of any structures, equipment or other facilities of any public utility, located within the limits of any highway, which may be required as incidental to the execution of this improvement, be made by said public utility, at its sole cost and expense, and in such manner as will not interfere with the construction of the improvement." "In numerous proceedings before us analogous to the instant proceeding, we have held that the relocation, changes in, or removal of any facilities of public utilities, other than the railroad company, which are located within the limits of the highway involved, the work in connection with which is incidental to the improvement itself, should be made at the sole cost and expense of the utility involved. We find no basis whatever in deviating from this principle in the instant proceeding."

The appellant, while admitting that a public utility places its facilities in a public highway subject to the possible necessity of removing or relocating them to conform to proper re-arrangement of the highway or the municipal works thereon, contends that "this obligation does not go to the point of removals for the purpose of turning over the space occupied for the exclusive use of some other privately owned utility corporation." It concedes that the city may exercise its police power over a utility occupying a street whereby another company may acquire a place in the highway "but this can be done only by the company, in whose favor the right is declared, paying to the company on the ground any damage the latter may sustain by such exercise; otherwise the act is confiscatory."

The position of the commission and the intervening appellees is that the improvement was made for the benefit of the whole community in the interest of public

safety and not for the benefit of the street railway company and that, therefore, under the decisions of the Supreme Court and this court the appellant is not entitled to compensation.

"As between two corporations exercising similar franchises upon the same streets, priority carries superiority of right": *Edison E. L. & P. Co. v. Merchants & M. E. L., H. & P. Co.*, 200 Pa. 209, 219, 49 A. 766. Consequently, the property of one utility may not be taken for the exclusive benefit of another utility, at least where the public interest and welfare are not involved: *Edison E. I. Co. v. Citizens E. Co.*, 235 Pa. 492, 84 A. 438; *Phila. M. & S. St. Ry. Co.'s Petition*, 203 Pa. 354, 53 A. 191; *Com. ex rel. v. Uwchlan St. Ry. Co.*, 203 Pa. 608, 53 A. 513.

There is equal authority for the rule—and the appellant so concedes—that a utility by erecting its facilities in a certain place in the highway with the express assent of the public authorities, does not thereby acquire a vested right perpetually to maintain such facilities in that particular location; and in after years if changed conditions render it necessary for the public good that the facilities be moved to a different part of the highway, the proper public authorities have the right in the exercise of a reasonable discretion to compel such removal at the expense of the utility: *American T. & T. Co. of Pa. v. Millcreek Township*, 195 Pa. 643, 46 A. 140; *Butchers' Union etc. Co. v. Crescent City L.-S. etc. Co.*, 111 U. S. 746, 4 S. Ct. 652. "Nor is the right limited to the control of the mere surface; it extends to the soil beneath, to whatever extent it may be required in aid of such purposes as fall within the municipal function, in connection with the health and safety of the public": *Scranton Gas & Water Co. v. Scranton City*, 214 Pa. 586, 591, 64 A. 84. Also see *Rafferty v. Central Traction Co.*, 147 Pa. 579, 593, 23 A. 884. In the present case while the county by authority of the legislature was exercising police power in the interest

of public safety it became necessary to give to the street railway a location occupied by the telephone company by prior right. Consequently, the appellant argues that it must be compensated and that otherwise its property is taken without due process of law. It bases its argument on two premises, factual and legal, neither of which is sound. It asserts that the change in the location of the conduit was solely for the benefit of the street railway company and that the right of the commission or other public authority to order a change in the location of the facilities of a public utility occupying the streets by permission of a municipality is limited to situations where the municipality changes the grade of the highway or the municipality and the utility alone are involved.

The facts in evidence demonstrate that this improvement was undertaken to relieve a serious congestion of traffic. This was recognized by the federal government which through the Federal Public Works Administration agreed to contribute 45% of $1,800,000, the estimated cost of the project. It involved the elimination of seven full or half crossings at grade by the street railway company at or near the points of greatest congestion as well as the grade crossing of the heavily traveled boulevard and West Liberty Avenue. The removal of the street car tracks from that section was dictated by public convenience and necessity and was not undertaken for the benefit of the street railway. The evidence and the obvious deductions therefrom show that the removal of the tracks and the manner in which such removal was accomplished was undertaken in the interest of the public and not for the benefit of the street railway company. It certainly would not be contended that it was to the interest of the railway to elevate its tracks and remove them from the public street where it would naturally receive its patrons. No other conclusion can be reached by a reasonable mind than that it was necessary to change the

location of the conduit in order that the improvement should accomplish the purpose for which it was undertaken. The fact that the location of the two utilities involved placing the foundation for the street car tracks where the conduit had been was a mere incident to the public improvement and the interests of each had to give way at the same time to the paramount interest of the public in the efficient operation of the highway.

The appellant is on equally insecure foundation when we consider the legal aspects of the case for the position urged by it has been rejected in former decisions by the Supreme Court and by this court.

In *Keystone Telephone Co. v. Phila. & Reading Ry. Co.*, 56 Pa. Superior Ct. 384, the facts are as close to the facts in this case as any two cases are often found to be. There an extensive grade crossing elimination was undertaken by the City of Philadelphia and the Philadelphia & Reading Railway Company and they entered into a contract intended to accomplish that result. To elevate the tracks of the railway certain columns were required to support the elevated structure and in the construction of these foundations it was necessary for the telephone company to relocate its conduit. We there said: "The act of changing the grade was then, in every essential feature, a municipal act, and the defendant company was but the hand through which the necessary physical work was performed." We held that even though the railway company assumed certain responsibilities for damages the telephone company had no claim because it held its right of way at all times subject to an exercise of the police power vested in the municipality. In reaching that conclusion we relied upon *Scranton Gas & Water Company v. Scranton City*, supra.

In the Scranton case a water company was compelled to change the location of its pipes to make way for the construction of a viaduct intended to carry a public highway over the tracks of a railway company. The

following extracts from the opinion in that case will of themselves support the order of the commission: "The power to control and regulate the streets so as to protect the public health, is one that cannot be bargained away by legislative or municipal grant. The power to control them for the protection of public safety, if not the same, stands on equally high ground. All authorities agree that such right is both paramount and inalienable ...... It is unnecessary to cite other authority to show that no liability results to the municipality, for the disturbance of a gas or water company's pipes in the public streets when made necessary by public consideration ...... It is the reasonable discretion of the municipal authorities that determines the extent of the change in the streets required to meet public necessities; and to that change whatever it may be, short of an abrogation or annulment of the company's right to maintain its system of pipes in the public streets, the company must conform at its own cost and expense. The former results from the inherent right of the municipality to the exercise of police power, and the latter from the subordinated rights of the gas company in the public streets under its original grant of privilege, to those of the public." [3]

The appellant attempts to distinguish the Scranton case by reason of the fact that there was there a change of grade but it ignores at the same time the principles upon which the decision was grounded. The principles involved in the Scranton case and in the Keystone case are the same as those involved here.

The appellant also argues that the order of the commission was arbitrary and unreasonable because more liberal treatment was afforded to the street railway company than to it. There are several answers to this

---

[3] Also see *Pittsburgh v. Consolidated Gas Co. of Pgh.*, 34 Pa. Superior Ct. 374; *Springfield Water Co. v. Phila. & G. St. Ry. Co.*, 45 Pa. Superior Ct. 516; *Phila. Elec. Co. v. Phila.*, 301 Pa. 291, 152 A. 23.

contention. The commission awarded to the street railway substantially the same amount as the county represented to the commissioners it was willing to pay and had agreed with the street railway company to pay. The depressed financial condition of the street railway company is a matter of common knowledge and the county may well have taken that into consideration. Finally, if the street railway company received more than it was entitled to get, of which we have some doubt, that will not support a payment to the appellant of damages to which it does not have a legal right: *Erie R. Co. v. P. U. C.*, 254 U. S. 394, 413, 41 S. Ct. 169, 172.

The public authorities, including the county commissioners, the city and the State Highway Department, in the exercise of a reasonable discretion, determined that it was necessary to change the location of the facilities of the telephone company. This was done in order to meet a public necessity and by virtue of the police power vested in those authorities. Since the change in the location of the conduit was ordered primarily for the purpose of carrying out the general plan and not for the benefit of the street car company the telephone company is not entitled to compensation for the expense of moving the conduit to another location in the same street. The occupation of the space formerly occupied by the conduit by the foundations for the ramp and the consequent removal of the conduit was a mere incident to the general undertaking.

The order of the commission is affirmed at the cost of the appellant.