Postal Telegraph-Cable Company, Appellant, v. Pennsylvania Public Utility Commission.

Argued October 7, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Douglass D. Storey,* with him *John B. Pearson, Harold V. Dixon* and *Storey & Bailey,* for appellant.

*Frederick L. Kiger,* with him *Harold A. Scragg, Paul D. Larimer* and *James H. Duff,* Attorney General, for appellee.

OPINION BY RHODES, J., January 27, 1944:

This is an appeal by the Postal Telegraph-Cable Company from a final order of the Pennsylvania Public Utility Commission ordering it to remove or relocate, at its sole cost and expense, a portion of its pole line.

The commission, on informal complaint, instituted its own investigation of the location and maintenance by appellant of certain pole and wire facilities on the northwest side of state highway route No. 117, which borders immediately upon the municipal airport at Connellsville. The commission's order requires appellant, at its own expense, to relocate two groups of poles, nine in all, each standing within the projection to the highway of the side lines of one of the two runways of the airport, and the wires strung across those spaces.

The order also directs a relocation within limits so fixed in terms of height of the poles and distance from the closest point of the particular runway that appellant's telegraph line could remain inside the boundaries of the public right of way—the highway—only if these sections were buried in subterranean conduit, and could continue aerially on poles only by purchase or condemnation of a more distant right of way across land privately owned. The order was made in reliance upon testimony that safe landing and taking off of aircraft requires a trapezoidal or fan-shaped space abutting the end of the runway to be free of any object higher than one-thirtieth of its distance from the end of the runway.

The telegraph line here involved is a portion of appellant's main line between Baltimore, Washington, and Pittsburgh; it was constructed about 1900. The airport is owned by the City of Connellsville. It was constructed by the Works Progress Administration, an agency of the Federal Government; the city supplied the land. Construction began in 1936. One of the conditions of the federal agency's participation in the project was that the city procure the removal of this telegraph line as well as lines of the Bell Telephone Company and the West Penn Power Company. One of the commission's witnesses testified that the three utilities, according to his understanding of the matter, had agreed each to move its own line if the city would provide new rights of way. The Bell Telephone Company buried its cable along the highway. The West Penn Power Company moved its line to a private right of way sufficiently distant to eliminate any hazard. Counsel for appellant offered to prove that the city ultimately assumed the expense of this removal, but objection to the offer was sustained. Appellant's division plant superintendent testified that it was not feasible to bury the telegraph line in underground conduit like the telephone cable, because of differences in design and

operation of appellant's system and the Bell system as respects protection against lightning. The type of wire used by appellant requires installation of fuses at the point of connection with any underground section of line, and replacement by appellant's nearest maintenance personnel would cause lengthy and costly interruption of service. He also testified that the Bell telephone cable, whether aerial or subterranean, is uniform throughout that system, and permits the location of lightning protection at every main office and sub-station, with maintenance personnel available to replace blown fuses. In addition, he estimated the cost of running the telegraph line, which is here involved, in underground conduit, if that were feasible, as much greater ($6,711) than that of acquiring a private right of way and re-routing the same section of line aerially ($3,906).

Appellant first challenges the jurisdiction of the commission to order its pole and wire facilities removed. In this respect appellant contends that no interest of the public within the contemplation of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101 et seq., is adversely affected by the present location of its telegraph line. Section 401 of the Public Utility Law, 66 PS §1171, requires every public utility to "make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public." Section 413, 66 PS §1183, empowers the commission to "determine and prescribe . . . . . . such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public . . . . . ." Appellant argues that "the public," referred to in these sections as respects a utility using facilities located

along the highway, includes no more than persons traveling on the highway, and for this position cites *Midland Borough v. Steubenville, East Liverpool and Beaver Valley Traction Co. et al.,* 300 Pa. 134, 150 A. 300. That case merely held the jurisdiction to restrain a public nuisance arising out of unauthorized use of utility facilities located along the highway, and alleged to jeopardize the safety of the citizens was in the Public Service Commission and not in the court of common pleas. That case did not make the distinction which appellant suggests, and which has no basis in established authority, and which is equally without basis in reason or policy. It is probably true that the greater part of the general public normally exposed to any hazard in the use by a public utility of facilities along the public highway are those using the highway for travel. But such a limited construction of the quoted sections of the Public Utility Law would place beyond the protection of that law and of the commission the rights, in many conceivable cases, of persons unquestionably members of the public although not users of the highway. For example, those on adjacent public land. There would seem to be no logical difference in the legal position of a member of the general public, who approaches a facility of a public utility on the ground adjacent or through the air above. Unreasonable regulations for the protection and safety of air travelers are unlikely on the part of the Public Utility Commission in view of the legislative restriction of its power to prescribe only such changes, alterations, and improvements in facilities as "shall be reasonably necessary and proper for the safety ...... of the public." We think any abuse of such power can be more effectively controlled by invoking that restriction than by arbitrarily depriving the commission of a portion of the jurisdiction which the legislature appears to have conferred upon it. The public for whose convenience, ac-

commodation, safety, and protection the act is concerned is not only that portion of the public which the utilities serve, but the general public which may come in contact with the facilities of the utilities. *West Penn Rys. Co. v. Pennsylvania Public Utility Commission,* 142 Pa. Superior Ct. 140, 151, 15 A. 2d 539.

Moreover, we do not think that this record clearly supports appellant's contention that the public is not entitled to use the airport as it would a public highway or park. The record shows that the use of the airport is largely in the hands of Fayette Airways, Inc., a business corporation, under an arrangement, not defined in the testimony, with the City of Connellsville. Persons arriving or leaving on flights made in the operation of the business of the corporation might be accounted for as its employees, business invitees, or licensees, but the arrangement between the corporation and the city is not shown to be exclusive of use of the airport by persons in no legal relation whatever to the corporation. The city is the owner of the land; and there was testimony of the regular use of the field by local flying clubs as well as by purely transient craft. One of the reasons for the choice of this location was that very close to it passes a civilian airway or "radio street" between Pittsburgh and Washington, controlled by radio beam maintained by the Federal Government, and open to public use subject to observance of certain regulations. Under all these circumstances it cannot be said that actual or probable use of this airport by members of the public as such is so wanting as to deprive the commission of jurisdiction in this case.

Appellant next contends that, assuming the commission has jurisdiction, the order is unjust and unreasonable. In the first place we do not consider the order unreasonable in so far as it makes a selection from the alternative plans or methods suggested for the physical elimination of the difficulty. Appellant itself virtually

disposed of the possibility of burial of the telegraph line along the highway. Its contention that, without disturbing the present location of its poles and wires, the hazard could be eliminated by extensions of the other ends of the two runways is open to several criticisms. Such extensions would not remove the temptation offered pilots landing or taking off with exceptionally large or heavy loads to use the sections of the runways now threatened by the telegraph line, unless these sections were destroyed as the extensions were built. The hazard would remain for any pilot not expressly warned. There was testimony that such wires are difficult for a pilot to see. Moreover, there was no testimony offered even by appellant as to the relative cost of such development of the field to the west as it suggested.

We find no merit in appellant's argument that the reasonableness of the commission's order is necessarily determined both by section 5 of the Act of April 25, 1929, P. L. 753, 2 PS §1425, State Law for Aeronautics (repealed and reenacted by the Act of May 25, 1933, P. L. 1001, §402, 2 PS §1468, Aeronautical Code), defining the lawful flight of aircraft, and by section 656 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §4656, relating to airport obstructions. Section 5 of the State Law for Aeronautics, and section 402 of the Aeronautical Code, 2 PS §§1425, 1468, declare flight in aircraft lawful "........ unless at such low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be dangerous or damaging to persons or property lawfully on the land or water beneath." But the reasonable exercise of the commission's power is not confined to the correction of situations to which all parties act with the utmost consciousness of the law. If this were so, the commission would have little to do. It may be that strictly lawful conduct by all concerned might have pre-

vented every railroad crossing accident in the history of the Commonwealth, but that would be a novel ground on which to challenge the reasonableness of a commission order for the elimination of a dangerous crossing.

It is no more significant that section 656 of the Penal Code, 18 PS §4656, makes it a misdemeanor to maintain "...... any smoke stack, flag pole, elevated tank, radio station tower, building or other structure or obstruction to the operation of aircraft, of a height in excess of thirty-five (35) feet above the level of the landing field, within five hundred (500) feet of the exterior boundaries of any airport, landing field, or intermediate landing field, licensed by this Commonwealth ......" Although this allows a taller structure or obstruction adjacent to an airport than permitted by the rule announced by the witnesses for the commission, and adopted in its order, it is not necessarily conclusive of the reasonableness of the order. Conceding, as appellant argues, that within the limits of the Penal Code a thirty-five foot silo, some feet higher than appellant's tallest pole, could be erected across the road from the airport, it would obviously not constitute as great a hazard as a line of wire stretching horizontally across the landscape. Trees and buildings are among its most prominent features; from the air above, a line of wire is likely to be very inconspicuous.

We are therefore of the opinion that the commission's order was neither beyond its jurisdiction nor unjust and unreasonable as a determination of the steps to be taken for the correction of this dangerous condition. However, the imposition of the costs of the change presents a more difficult problem. The commission imposed the cost upon appellant. It reached this result, as it said, in reliance upon our decision in *Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 529, 12 A. 2d 479. In that case the relocation of the telephone

company facilities ordered at the sole cost of the company was a relocation within the limits of the street in which they had been laid. This is not authority for imposing upon a utility the cost of complete removal of the facilities from a public highway to land privately owned. The controlling principle for denying recovery by a utility for the cost of relocation of facilities within street lines has been stated in *Delaware River Joint Commission Case,* 342 Pa. 119, at page 122, 19 A. 2d 278, at page 279, as follows: "Appellant's structures and appliances involved were within street lines and have been relocated and reconstructed within street lines. The consent ordinances conferred no franchise, interest or estate in any particular portion of the streets; on the contrary the grant was expressly subjected to municipal regulation as will appear later. To require appellant to remove its conduits from one location in the street to another, or, in other words, to require it to surrender, in the course of the general improvement of the highway system, the space in which a conduit was constructed in one part of the street and permit its reconstruction in another, was therefore not a taking of property; after the reconstruction, the appellant enjoyed the same street franchise under its consent ordinances as it had enjoyed before."

In *Philadelphia Electric Co. v. Commonwealth et al.,* 311 Pa. 542, at page 544, 166 A. 892, where recovery by a utility in a similar case was denied, the Supreme Court, adopting the lower court's language, said: " 'There was no taking of any portion of the plaintiff's property, it was not deprived of its easement and the only damage of which it complains is the cost of relocating its conduits and light standards [in the streets] to make them conform with the new [established] grade.' "

In *Scranton Gas & Water Company v. Scranton City,* 214 Pa. 586, at page 591, 64 A. 84, at page 85 (cited in *Bell Telephone Co. of Pennsylvania v. Pennsylvania*

*Public Utility Commission,* supra, 139 Pa. Superior Ct. 529, 12 A. 2d 479) our Supreme Court said: "It is the reasonable discretion of the municipal authorities that determines the extent of the change in the streets required to meet public necessities; and to that change, whatever it may be, short of an abrogation or annulment of the company's right to maintain its system of pipes in the public streets, the company must conform at its own cost and expense. The former results from the inherent right of the municipality to the exercise of police power, and the latter from the subordinated rights of the gas company in the public streets under its original grant of privilege, to those of the public."

It is manifest, we think, that the order in the present case effects a result to which those cases are inapplicable. In effect, appellant's right to maintain its facilities within the highway limits has been abrogated; it has been deprived of its easement. This is not merely to control appellant's use of its property right in the interest of the public, a valid exercise of the police power through the instrumentality of the commission (*Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission,* 136 Pa. Superior Ct. 1, 7 A. 2d 86); but, in our judgment, it amounts to a taking of appellant's property, and, from our determination of the basis of the jurisdiction of the commission, a taking for public use. Under these circumstances the cost of the relocation of the line cannot be permitted to rest upon appellant. It should be borne by the portion of the public directly benefited—the municipality which owns the airport, the City of Connellsville. But apparently this result cannot be attained on the present state of the record, as the city was not a party to the proceedings before the commission. And it does not appear from any part of the Public Utility Law that the commission has power to make the city party to proceedings before it with a view toward imposition of the costs upon the city. Sec-

tion 401 of the Public Utility Law, 66 PS §1171, requiring the maintenance of safe and reasonable service and facilities and the making of such alterations and improvements as are necessary to that end, subjects a municipal corporation to the regulation and control of the commission only as to its furnishing public utility service beyond its corporate limits. Section 413 of the Public Utility Law, 66 PS §1183, empowering the commission to determine and prescribe such alterations and improvements, contains no mention of municipal corporations. But article 9, §903, of the Public Utility Law, 66 PS §1343, authorizes the commission to institute proceedings to enforce any of its regulations or orders by appropriate action in the Court of Common Pleas of Dauphin County, and empowers the court to join any additional parties including municipal corporations as it deems necessary to make its judgment effective. An approach is thus offered toward what seems to us to be the proper disposition of the matter in controversy—that the line of wire in question be relocated, that it be relocated, under the circumstances, at such a point off the highway and by such method as appellant determines, and as will satisfy the terms of the commission's order, that appellant secure the land for the relocated line, and that the entire expense of the relocation be borne by the City of Connellsville.

The commission's order requiring the relocation of appellant's line is affirmed; the order otherwise is reversed, and the record is remitted to the commission for further proceedings in conformity herewith.