Lower Chichester Township, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued November 22, 1955.   Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Philip Richman,* with him *Frank I. Ginsburg,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for appellee.

*Samuel Graff Miller,* with him *Henry P. Sullivan* and *Vincent P. McDevitt,* for intervenor, appellee.

OPINION BY WRIGHT, J., January 17, 1956:

On March 9, 1955, the Philadelphia Electric Company filed with the Pennsylvania Public Utility Commission an application stating that it proposed to construct a one-story building in the Township of Lower Chichester, Delaware County, Pennsylvania, on a site located 915 feet from Laughead Avenue and 145 feet from the boundary line between Lower Chichester Township and Trainer Borough. The application set forth that the proposed building was necessary to house control equipment consisting of switchboards, relays, batteries, instruments, control facilities, telephones and other accessory equipment essential to the operation of an outdoor substation then being erected on an undeveloped tract of approximately twenty acres owned by the company at the intersection of Laughead

Avenue and the township boundary line. It was further alleged that the substation in question was required to meet the increasing demand for electric service in the area between the City of Chester and the Pennsylvania-Delaware state line, and that it would provide for the transmission of additional bulk power capacity and energy into said area. Finally, the application averred that the proposed control house site was unavailable to the company under the provisions of a zoning ordinance of Lower Chichester Township, unless the commission should find that the proposed situation thereof was reasonably necessary for the convenience or welfare of the public, and prayed that such a finding be made.

A protest against the application was filed by the township, denying that the proposed location of the control building was essential for the convenience and welfare of the public, and averring that the proposed substation was being located immediately adjacent to hundreds of residences in the township; that it would create dangers to the residents and their children in the nearby homes; that it was being located in a strictly residential area which had been zoned residential, whereas there was ample undeveloped and suitable land nearby zoned industrial; that it would deprive the township of valuable land from which it would receive substantial taxes; that it would deprive the township of land which it had planned to use for recreational purposes; and that the proposed facilities would create noise and other disturbances adversely affecting the public residing in that portion of the township. A motion to strike and dismiss the protest was denied without prejudice, and a full hearing was held.

Testimony on the part of the company was given by an assistant system development engineer and an

assistant electrical engineer. The evidence discloses that a number of parcels of land in Lower Chichester Township were considered as possible sites for the proposed substation and control building. The site named in the application was the only one found satisfactory considering the area required and the accessibility of the company's high tension line extending from the Bradford substation in Chester County. It is important to note that the commission had previously (December 6, 1954) found necessity for this transmission line, which is not here questioned, and had approved the route thereof. The witnesses also testified that factors to be considered in connection with the location of a major substation included the proximity to the heavy industrial load, the proximity to existing substations with present interconnecting facilities and the sufficiency of the plot area to accommodate incoming tower lines in addition to the substation structure and control building.

On behalf of the township, testimony was heard from the township engineer, the township secretary, the president of the board of commissioners, the tax collector, the director of the Delaware County Planning Commission, a real estate broker, and three home owners residing adjacent to the proposed substation site. Their evidence concerned the potential hazard and danger to the children from the establishment of the substation, loss of the site as a playground, decrease in real estate values, and loss of tax revenue. Evidence was given showing that there were a number of vacant parcels of land in lower Chichester Township and Trainer Borough all located in areas zoned industrial and allegedly available as potential substation sites. The township's witnesses did not criticize the control building site as such, but took the position that the

entire substation should be installed at some other location.

The commission found that there was sufficient evidence of record to substantiate the company's position that no other suitable site was available in Lower Chichester Township; that the only actual building to be located on the site was the control building, the remainder of the tract being devoted to open steel structures on concrete foundations upon which the transmission facilities would be installed, also outdoor type transformers, switches, lighting arresters and other outdoor facilities, together with the terminal towers for the incoming transmission line; and that the proposed situation of a control building on the substation plot was reasonably necessary for the convenience and welfare of the public.

Section 3101 of the First Class Township Law (Act of June 24, 1931, P. L. 1206, as amended, 53 PS 19092-3101) provides that "For the purpose of promoting health, safety, morals, or the general welfare of townships, the boards of township commissioners are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, their construction, alteration, extension, repair, maintenance, and all facilities and services in or about such buildings and structures, and percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population and the location and use of buildings, structures, and land for trade, industry, residence, or other purpose . . ." However, section 3110 of the statute (53 PS §3110) provides that "This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by public service corporations, if, upon petition of the corporation, the Public Utility Commission shall, after

a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public". Thus, while first class townships have the power to zone with respect to the buildings of a public utility company, subject to a determination by the commission that the present or proposed situation of such buildings may be reasonably necessary, they do not have power, either express or implied, to regulate utilities with respect to uses and structures other than buildings: *Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 105 A. 2d 287.

On this appeal, the township contends that the Public Utility Commission considered only the consuming public, and disregarded the interests of the people of the municipality. It further contends that the commission should have considered the question of reasonable necessity "with reference to the facilities of the substation as well as the building". Counsel cites section 401 of the Public Utility Law (Act of May 28, 1937, P. L. 1053, 66 PS §1171) which provides that "Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public"; also section 901 (66 PS §1341) which provides that "The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth"; and finally section 413 (66 PS §1183) which provides that "Whenever the commission . . . finds that the service or facilities of any public utility are unreasonable, un-

safe, inadequate, insufficient, or unreasonably discriminatory . . . the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public, and shall fix the same by its order or regulation". Relying upon these statutory provisions, counsel argues that a utility cannot "determine its location without regard to what is necessary or proper for the service, accommodation, convenience, or safety of the public"; and that the commission cannot "shed its authority to examine into the propriety of the construction of huge substations by utilities merely under the guise of the necessity for the construction of a control building at whatever site a utility happens to choose".

The public for whose convenience, accommodation, safety, and protection the Public Utility Law is concerned does not consist solely of persons served by the utility, but also includes persons generally who may come into contact with the utility's facilities: *Postal Telegraph-Cable Co. v. Pa. P. U. C.,* 154 Pa. Superior Ct. 340, 35 A. 2d 535. The voluntary expansion or extension of the facilities of a public utility company lies in the discretion of company management, but to the extent that property or rights or easements therein must be acquired through condemnation the utility must establish the necessity therefor and obtain the approval of the Public Utility Commission of the exercise of the right of eminent domain: *Duquesne Light Co. v. Upper St. Clair Township,* supra, 377 Pa. 323, 105 A. 2d 287. In such a proceeding it is proper for the com-

mission to pass upon the question of the location of facilities, especially if the utility should act wantonly, arbitrarily, or unreasonably in selecting a site. See *Wilson v. Public Service Commission,* 89 Pa. Superior Ct. 352. However, it is not within the province of the commission to interfere with the management of a utility unless an abuse of discretion or arbitrary action by the utility is shown. Thus, in *Byers v. Pa. P.U.C.,* 176 Pa. Superior Ct. 620, 109 A. 2d 232, Judge HIRT said: "The selection of a route for transmission lines is a matter for the public utility in the first instance and unless it is shown that it proposes to exercise the powers conferred upon it wantonly or capriciously the law does not intend that the Commission should withhold its approval merely because another route might have been adopted, which would damage the owners less or lessen the inconvenience to them in the operation of their farm". The principle of the *Byers* case applies with added force in the present situation because, as previously indicated, the route of the transmission line had already been fixed, and because the utility owns the tract of land under consideration so that the question of condemnation is actually not involved.

In the case at bar, while the issue technically concerned only the control house, appellant was given full latitude at the hearings and failed to convince the commission that the utility had acted wantonly, capriciously or unreasonably in selecting the site for the location of the substation itself. The commission took into consideration the factors of area, and accessibility to the incoming transmission line, including the route of said line. Furthermore, it discussed the other factors involved, such as proximity to load and to existing substations. Turning to appellant's evidence, the commission found that the hazard represented by the erection

of a substation in a residential area would be adequately safeguarded by the installation of a steel fence topped with barbed wire. In addition, it found that the existence of vacant land on four sides of the site, and the shielding of the area from public view by the planting of trees and shrubbery would make the tract less objectionable. It noted that while the substation was to be situated in an area zoned residential, the location was in the extreme corner of the zone. The commission recognized that there would be a loss of tax revenue, but concluded that such a loss would result to some degree irrespective of the location of the substation within the township.

The Chichester substation is urgently needed to provide adequate and reliable electric service in the load area. Its location was dictated by considerations which, in the commission's judgment, management had justifiably found controlling. Having performed our function on this appeal, see *Duquesne Light Co. v. Pa. P.U.C.*, 176 Pa. Superior Ct. 568, 107 A. 2d 745, we find no abuse of discretion, error of law, or lack of evidence to support the finding, determination, and order of the commission. We are satisfied that the commission thoroughly considered the evidence, that it complied properly with the relevant statutory provisions, and that its decision should not be disturbed.

Order affirmed.