# Cooper-Bessemer Company v. The Ambrosia Coal and Construction Company

*David Ketler*, for plaintiff.
*Richard Audino*, for defendant.

ACKER, J., May 2, 1969.—Defendant has, through a preliminary objection, raised a question of jurisdiction contending that neither this nor any other court of common pleas of this Commonwealth has jurisdiction to entertain an equity action dealing with obstructions to safe flight into an airport because the Federal government has preempted the field. This objection is decided solely on the grounds raised by defendant.

For the purpose of this opinion the facts as set forth in plaintiff's complaint in equity are assumed to be true and correct.

It is alleged that plaintiff, Cooper-Bessemer Company, is the lessee of certain lands which are used for airport purposes in Pine Township, Mercer County, Pa., and that this airport is licensed by the Pennsyl-

vania Aeronautics Commission to plaintiffs as a personal use airport for private operation. Plaintiffs have for many years used the airport for the transportation of executive personnel and materials between Mt. Vernon, Ohio, and Grove City, Pennsylvania, and for this purpose own and operate a Beechcraft Queenair Airplane with a gross weight of approximately 7,700 pounds. The airport has two runways, one extending in a north-south direction with a length of 2,450 feet, and the other in a southeast-northwest direction for approximately 1,900 feet. Due to the weight and flight characteristics of plaintiff's aircraft, it is required to use the longer runway and that there be no unreasonable obstruction to the approach of the aircraft to the runway.

Defendant has moved a dragline which is more than 35 feet in height into an area within 500 feet of the end of the north-south runway at the place where the approaches are made for landing. In addition, defendant has constructed spoil piles similarly positioned of equal height. The obstructions created by defendant have made the airport unsafe for use by plaintiff in preventing both approaches and takeoffs. This has required plaintiff to abandon the airport and required use of other facilities at a great distance.

Plaintiff claims violations by defendant of several statutes, i.e., the Act of July 27, 1953, P. L. 641, et seq, 1, as amended, 2 PS §1458, which defines the approach area of a runway of a commercially licensed airport to include all that area within the incline plane starting at each end of the runway and extending outward horizontally for a distance of 1,000 feet at a ratio of one foot of height for every 20 feet of distance for each end of the runway and having a width of 300 feet. A violation of this statute is a summary offense, providing each day's violation to be a separate and distinct offense. Section 2.1 of that act provides that it

is unlawful to erect a structure within two miles of the perimeter of any airport above a 40 to 1 foot glide plane. In addition, section 656 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4656, provides that whoever erects and maintains an obstruction to the operation of aircraft of a height in excess of 35 feet above the level of the landing field within 500 feet of the exterior boundaries of any airport licensed by the Commonwealth is guilty of a misdemeanor, and each day's continuation is a separate and distinct violation. Plaintiff concludes that defendant by erecting its dragline and depositing spoil piles is in violation of all of the above mentioned statutes. It requests that in order to prevent a multiplicity of actions and to determine the legal rights of the parties, an injunction after hearing issue and require the immediate removal of the obstructions to air travel. Plaintiff also requests damages against defendant for the erection and maintenance of the obstruction and such general relief as may be appropriate. Defendant contends the Federal government has sole and exclusive control of the subject and this court is without authority to consider the matter.

There can be little doubt that by the Federal Aviation Act of August 23, 1958, sec. 1108, 72 Stat. 798, 49 U.S.C.A. §1508, "The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States. . . ." Likewise, by section 1301, 49 U.S.C.A. §1301, subsec. 24, " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to assure safety, takeoff and landing of aircraft." Nor can there be question that the Federal Aviation Act was passed for the purpose of assuring a single authority to determine the rules for safe and efficient use of a nation's

airspace: Air Line Pilots Association, International v. Quesada, 276 F. 2d 892 (1960). Therefore, it is contended by defendant that because the Federal government has placed itself into this vital field of commerce, the statutes previously passed by the Commonwealth of Pennsylvania are completely ineffectual, unenforceable and void, and cannot be used as a basis for this action.

A most material distinction must be noted between regulations of the Federal government promulgated to assure safe flights in air and those statutes of the Commonwealth here involved. The Federal government by statutory regulation has sought to determine the height at which aircraft might fly over built-up areas, etc. So in such cases as Allegheny Airlines, Inc. v. Village of Cedarhurst, 238 F. 2d 812, same case 132 F. Supp. 871 (1956), strongly relied upon by defendant, it was held that a borough has no right to limit the height at which aircraft might pass over it, for this subject has been preempted by the Federal Government. The Allegheny Airlines case, supra, is clearly inapposite, for in the instant case the restriction is against the property owner as to the height at which obstruction to flight may be created. These restrictions are in assistance to the Federal regulations to permit better enforcement in providing protection for the traveling public.[1]

Defendant contends, however, that by a regulation of the administration—Federal Aviation Agency— Washington, D.C., part 626, effective July 15, 1961, now designated as part 77 of the Federal Aviation regulations, it is clearly indicated that the Federal

---

[1] A local ordinance to control flights by attempting to regulate noise level of Kennedy Airport was likewise held to be beyond local authority: American Airlines, Inc. v. Town of Hempstead, 272 F. Supp. 226 (1967), affirmed 398 F. 2d 369, cert. denied 393 U.S. 1017.

Government has not only preempted the determination of the height at which airplanes might fly, but also the height of structures erected within designated flight paths.

An examination of the above mentioned regulation indicates that it is to be applicable to the following types of impediments to safe flight.

"Section 626.2 definitions, (f) 'Alteration' means any construction which would result in a change in height or lateral dimensions of an existing structure. . . . (h) 'Construction' means the erection of a permanent or a temporary nature. . . (x) 'Structure' means any form of construction or apparatus of a permanent or temporary character, including any implements or material used in the erection, alteration, or repair of such structure."

The obstructions to flight in the instant case are alleged to be a dragline more than 35 feet in height and deposit spoil piles likewise in excess of 35 feet. These obstructions, although just as dangerous as a structure, new construction or alteration of existing structure, are not governed within part 626 as contended by defendant.

Plaintiff well contends that Congress specifically intended to continue to receive the aid of the States in the enforcement of its regulations and in the protection of the public, for it provided in the Federal Aviation Act of August 23, 1958, 49 U.S.C.A. §1506, "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing in common law or by statute, but the provisions of this chapter are in addition to such remedies." Federal statutes placing authority to regulate control of airspace and provide standards for its operation do not exclude State law not inconsistent with their purposes: Southeastern Aviation, Inc. v. Hurd, 209 Tenn. 639, 355 S.W. 2d 436, 371 U.S. 21, 9 L. Ed. 96 (1962). Motion

to dismiss granted for want of a substantial Federal question.

Likewise, the Federal statutes were not intended to cut off the common law and statutory rights of private land owners: Jackson Municipal Airport Authority v. Evens, 191 S. 2d 126, (Miss. 1966); Griggs v. Allegheny County, 369 U.S. 84, 82 S. Ct. 531, 7 L. Ed. 588 (1960).

In Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491 (1955), plaintiffs, property owners, near three runways of the Greater Pittsburgh Airport prayed for equitable relief from the noise and disturbance made by aircraft over their residence. In supporting their position the Supreme Court thoroughly considered the contention that the Civil Aeronautics Act of 1938 had set forth the requirements of flight giving jurisdiction solely to the Federal government. Previously in Crew v. Gallagher, 358 Pa. 541, 58 A. 2d 179 (1948), the Supreme Court held, page 548: ". . . that if airplanes fly very close to plaintiffs' buildings, or in any other way cause real damage to plaintiffs' property, adequate relief in equity will be available to them." In Gardner v. Allegheny County, supra, the court held that to deny plaintiffs equitable relief will require them to move their homes or property and lives while they wait for a solution of the flight problems by either the Pennsylvania or Supreme Court of the United States, page 112: ". . . would be placing too large a price on abstract theory and procedure and too small a price on life." Therefore, the court held that State courts have the jurisdiction and power which Congress has neither limited nor destroyed to enjoin trespasses arising from frequent interflight or intraflight of land owners' property below or outside the minimum safe altitude of flight. Defendant contends, however, that under part 626 of the regulation of administration of the Federal Aviation Agency whether

the obstruction in question is a hindrance to commerce has not as yet been determined. As previously noted in this opinion, however, this court does not believe that the Federal Regulations are applicable to these facts, but in addition, the overruling of this demurrer is not a determination of the factual question involved but solely that plaintiff has the right to proceed in this court.

It is clear that common law actions for damages continue despite the Federal Aviation Act of 1958: Porter v. Southeastern Aviation, Inc., 191 F. Supp. 42, D. C. Tenn. (1961) ; Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A. 2d 796 (1964).

Yaffee v. Pennsylvania Power and Light Company, 385 Pa. 520, 123 A. 2d 636 (1956), involved an action in trespass for wrongful death which resulted in the lower court granting a compulsory nonsuit. This was reversed on appeal. The decedent was killed while flying a single-engine plane 185 feet above the Susquehanna River and striking a power line at that elevation. It was obvious in the course of the trial that decedent had violated the Pennsylvania regulations requiring him to fly at an altitude of not less than 500 feet, but may not have violated the Federal standards. The lower court held that the Pennsylvania standards must be applied. The appellate court in reversing concluded that the Federal standards were applicable in that decedent was flying over "open water" at the time of his death. However, although recognizing that Federal regulations were applicable, decedent was not relegated to enforce his cause of action either before the Federal Civil Aeronautics Board or in Federal Court for the case was returned to the Court of Common Pleas of Dauphin County to proceed with a new trial.

If defendant be correct, a State court of common pleas can hear and determine money damages against

the owner or operator of an instrumentality which injures or kills a pilot if he expects that an aircraft will use the legalized, unoccupied airspace surrounding the installation, but the same court cannot order its removal to prevent such a tragedy. This proposition is repugnant to the established law and good common sense and cannot prevail.

Interestingly, it has been recognized in Pennsylvania that the Public Utility Commission has the right to require a telegraph company to remove its poles and lines along a State highway bordering a municipal airport: Postal Telegraph Cable Company v. Pennsylvania Public Utility Commission, 154 Pa. Superior Ct. 340, 35 A. 2d 535 (1943).

In Commonwealth ex rel v. VonBestecki, et ux., 30 D. & C. 137 (1937), plaintiff had erected a wooden tower next to an airport 154 feet in height which fell. He then erected a second one 98 feet in height which was destroyed by fire. Both of these towers had been supported by guywires which, due to their height and color, were unable to be seen at night and were dangerous to air travel in and out of the Harrisburg Airport. It was learned that defendant intended to erect a third tower. The Commonwealth asked for an injunction to prevent the erection. In granting this relief the court stated, page 142:

" 'We think the question is unaffected by the regulation promulgated by the Department of Commerce, under the Air Commerce Act of 1926 (49 U.S.C.A. 171, et seq.) . . . requiring aeronauts to fly in rural sections at a height not less than 500 feet above the surface, for in our view that regulation does not determine the rights of the surface owner, either as a trespass or nuisance.' "

The criterion to determine whether Federal regulations have ousted the State is whether the scheme of the Federal plan is so pervasive as to make reasonable

the inference that Congress left no room for the States to supplement it or whether the Federal interest is so dominant that the Federal system will be assumed to preclude enforcement of State laws on the same sub- ject. States may also be denied the field if the State policies might produce a result inconsistent with the object of the Federal statutes or regulations: White- hall Laboratories v. Wilbar, 397 Pa. 223, 154 A. 2d 596 (1959) ; Commonwealth v. Nelson, 377 Pa. 58, 350 U.S. 497, 100 L. Ed. 640, 76 S. Ct. 477, rehearing denied, 351 U.S. 934, 100 L. Ed. 1662, 76 S. Ct. 785.

Although it is recognized that in some situations Federal legislation and regulation is deemed so per- vasive as to rule out all local and State attempts to regulate in the same area preempted by the Federal government, it is the holding of this court that the Fed- eral government has not attempted to deny the States the right to control the height at which structures are to be erected which interfere with flight as long as the State statutes do not conflict with the minimum safe standards established by the Federal govern- ment. The statutes relied upon by plaintiffs in the opinion of this court supplement the Federal regula- tions controlling the height of objects on landing and takeoff approach areas and are, therefore, reasonable, even if the boom and culm banks are to be regarded as within the Federal regulations.[2]

In oral argument it was candidly admitted by the counsel for the defendant that his client was in all probability in violation of the Federal regulations as well as the Pennsylvania statutes referred to by plain- tiff. His only contention was the court did not have jurisdiction to do anything about the violation. With this contention we cannot agree.

[2] It is to be noted that these obstructions were previously held in this opinion as not within the provisions of the Federal Aviation regulations.

664

ORDER

And now, May 2, 1969, the preliminary objection in the nature of a petition raising questions of jurisdiction is dismissed.